[No. G001160. Fourth Dist., Div. Three. July 31, 1985.]

MANUEL S. VEGA, JR., Plaintiff and Appellant, v.
WESTERN EMPLOYERS INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Jack W. Golden for Plaintiff and Appellant.

Ruston & Nance, Joan E. Spurney and Thomas E. Martin for Defendant and Respondent.

OPINION

CROSBY, J.—We are once again asked to hold as a matter of law that the general release of an insurance carrier from "any and all claims" executed following a postjudgment settlement of a personal injury action extends to actions brought against the insurer for unfair practices pursuant to Insurance Code section 790.03. Again we decline.

I

Manuel S. Vega, Jr., was injured in an August 1975 truck accident. He brought a personal injury action which yielded a jury award of $240,000. Defendants filed an appeal. But Vega settled with their carrier, Western Employers Insurance Company, for $225,000 before it was resolved; and a satisfaction of judgment was entered.

As a condition of the settlement, Vega signed a form "releas[ing], acquit[ting] and forever discharg[ing] W. E. SMITH COMPANY [the owner of the truck which struck his vehicle], WILLIAM DEAN PIERCE [the driver] & WESTERN EMPLOYERS INSURANCE COMPANY . . . on any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries ad [sic] property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 6th day of August, 1975 . . . ." The form also provided for Vega's waiver of Civil Code section 1542 in this language: " 'Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.' "

Eleven months later, Vega sued Western for its alleged bad faith refusal to settle his personal injury claim in advance of trial (Ins. Code, § 790.03). Vega alleged the following in a verified complaint: Injuries sustained in the accident forced him to leave his job and he had been unemployed since February 1976. He discussed the lawsuit with Western for several years, but its adjusters refused to make a settlement offer although the liability of its insureds was apparent. In late 1979, he advised Western the holder of the mortgage on his residence had initiated foreclosure, but Western was unmoved. The foreclosure proceedings were temporarily stayed after he declared bankruptcy in February 1980, but the stay was lifted the following year. He lost the home one month before trial.

Western moved for summary judgment based on the release Vega executed as part of the post-verdict settlement. Its adjuster's skeletal declaration stated, "following judgment . . . in the sum of $240,000.00, and pending appeal, the case was settled and any and all claims and causes of action against WESTERN EMPLOYERS INSURANCE COMPANY were settled for $225,000.00." Vega declared in opposition, "I did sign a release and have reviewed the release attached to the defendant's Motion for Summary Judgment and find it to be an accurate copy. [¶] It was my intent to release any and all claims arising out of the August 6, 1975 incident mentioned in the release, but was not my intention to release WESTERN EMPLOYERS INSURANCE COMPANY from bad faith practices implemented within their claims department. . . ." The motion was granted, and Vega appeals.

## II

■ Western argues that Vega's express and unambiguous release of the company as part of the compromise and settlement of the underlying personal injury action, combined with his waiver of Civil Code section 1542, compels judgment in its favor as a matter of law. It also argues his "[s]tatement of intent [in opposition to the motion] as to whom was released from which causes of action is clearly improper and inadmissible . . ." and the matter must be decided within "the four corners of the Release of All Claims." For the reasons which follow, we cannot agree.

Several recent cases have considered the effect of a personal injury settlement and release on postsettlement suits for unfair practices against insurers. In *Rodriguez v. Fireman's Fund Ins. Co.* (1983) 142 Cal.App.3d 46 [190 Cal.Rptr. 705], plaintiff settled before trial. During the negotiations her attorney advised the carrier she reserved the right to sue the insurer for unfair claims settlement practices; and in executing the form release, Rodriguez deleted all language which would have released Fireman's, its agents or employees.

Rodriguez filed suit, and the insurer demurred based on the release. The demurrer was sustained without leave to amend, but the Court of Appeal reversed. The court first determined plaintiff's settlement and dismissal with prejudice of her personal injury suit "concluded" that action within the meaning of *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], thus entitling plaintiff to sue the insurer for unfair claims practices. (*Rodriguez v. Fireman's Fund Ins. Co., supra,* 142 Cal.App.3d 46, 53.)

That procedural hurdle aside, the court next announced that such suits do not violate public policy. In reaching this conclusion, the *Rodriguez* court

candidly acknowledged the potential for abuse by personal injury litigants, but determined it was outweighed by the greater evil of insurance companies compelling settlements through unfair claims procedures and then using the settlement as a shield from liability in unfair practices or bad faith actions. (*Id.*, at p. 56.)

The following year another division of the Court of Appeal interpreted *Rodriguez* to bar actions for unfair practices after settlement and release in all but those cases where "the allegedly inadequate settlement was accompanied by an express reservation of the right to claim more in a bad faith action . . . ." (*Trujillo* v. *Yosemite-Great Falls Ins. Co.* (1984) 153 Cal.App.3d 26, 28 [200 Cal.Rptr. 26], fn. omitted.) The court held the complaint was demurrable, but reversed to allow an opportunity to amend to plead a *Rodriguez* reservation of rights.

In our view, *Rodriguez* stands only for the rather pedestrian notion that actions specifically reserved are not released; and we recently parted company with *Trujillo* in *Afuso* v. *United States Fidelity & Guaranty Co.* (1985) 169 Cal.App.3d 859 [215 Cal.Rptr. 490]. There, plaintiff settled before trial, executed a release of all claims, and then sued the alleged tortfeasor's insurer for unfair claims practices. Plaintiff did not attach a copy of the release to her complaint, nor did she allege a *Rodriguez* reservation of rights. Nevertheless, the insurer demurred based on the inclusion of its name in a general release. In reversing, we observed the purported judicial notice of the release was improper and concluded the failure of the plaintiff to plead a reservation of the right to pursue an unfair practices or bad faith action did not render the complaint demurrable in any event.

This case takes the issue one step further, i.e., to the summary judgment stage. And again we hold the new action is not barred as a matter of law: There is no magic in the mere inclusion of the insurer's name in a release of uncertain parameters. That merely tells us the company was released for the original claim, nothing more necessarily.

Of course, Western, as neither a party to the personal injury action nor an entity which could have been directly held responsible, claims the only reason it was named was to ensure that Vega could not pursue the present case, the only "possible cause of action" he had. On the other hand, there is no reference to bad faith, unfair practices, or Insurance Code section 790.03 in the release. Nor is there a recitation of separate consideration for any claim other than personal injuries. Moreover, in our experience it has not been an unusual practice for insurance carriers to name themselves in form releases over the years, even before bad faith litigation came into vogue or Insurance Code section 790.03 was adopted. Thus, we conclude

the purpose for the inclusion of Western's name in the release is ambiguous and remains a factual question.

Accordingly, parol evidence was and is admissible on the question of the parties' intent. And regardless of the language in a form release, there are few, if any, occasions where the issue of the releasor's intent is not one of fact. ■ For example, "[w]hile the specific inclusion of a discharge of claims for 'injuries known and unknown' perhaps adds weight to the argument that such claims were intended to be discharged by the release, it does not add to the scope of the release. [Fn. omitted.] The question remains as one of fact whether the [releasor] actually intended to discharge such claims. If the evidence, independent of the words of the release, indicates that the parties have consciously contracted in reference to unknown claims, the release is, of course, binding." (*Casey* v. *Proctor* (1963) 59 Cal.2d 97, 109-110 [28 Cal.Rptr. 307, 378 P.2d 579].) ■ This principle was reinforced in *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398 [163 Cal.Rptr. 711]: "[M]ere recital, as in the release signed by plaintiffs, that the protection of Civil Code section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling. Whether the [releasor] intended to discharge such claims or parties is ultimately a question of fact. [Citations.]" (*Id.,* at p. 411.)

■ The evidence as to the parties' intent is in conflict. As indicated above, the release purported to apply to all claims arising out of the accident; but no mention was made of bad faith or unfair insurance practices. Western presented no evidence the subject was ever discussed during settlement negotiations, and Vega flatly denied he intended to release his Insurance Code claim against Western.

Western's adjuster did state the settlement was for "any and all claims and causes of action against WESTERN . . . ." But this self-serving conclusion is somewhat belied by the amount of the settlement, $15,000 less than the jury verdict. That figure strongly suggests no separate consideration was given for the release of any claim against Western and only settlement of the personal injury action was contemplated. Moreover, it is reasonable to suggest that unfair insurance practice cases have their genesis in claims offices, not traffic collisions. Thus, the release could have been executed in the honest belief no claim beyond the personal injury suit was meant to be included. In sum, there was at least a triable issue of fact as to the intent of the parties.

We note in passing, it would have been more gallant, perhaps, for Vega and his counsel to have specifically reserved the present cause of action in the release and to have also warned the carrier of the reservation, as in

*Rodriguez;* but this failure itself somewhat supports the notion inclusion of an unfair practices action was not contemplated when the release was executed. Also, few will be unduly disturbed by the breach of etiquette, if any, should the allegations of this complaint have merit. If they do not, Vega will not recover in any event.

Judgment reversed. Vega is entitled to costs on appeal.

Trotter, P. J., and Sonenshine, J., concurred.