**In re INTERNATIONAL FILTER CORPORATION, Debtor.**

**Bankruptcy No. SB 83–04591 DN.**

United States Bankruptcy Court,
C.D. California.

June 6, 1986.

Joseph A. Eisenberg of Levene & Eisenberg, Los Angeles, Cal., for International Filter.

U.S. Atty. Robert C. Bonner and Asst. U.S. Attys. Robert S. Horowitz and Charles H. Magnuson, for IRS and U.S. Customs Service.

MEMORANDUM OF DECISION (OBJECTION TO CLAIM NOS. 50 AND 51; IRS/HUWEILER)

DAVID N. NAUGLE, Bankruptcy Judge.

The Internal Revenue Service ("IRS"), an agency of the United States, filed two claims (designated herein as Nos. 50 and 51). Mr. and Mrs. Loren Huweiler ("Huweiler") have filed a demand for subrogation rights to the extent of $49,536.56 of the amount claimed by the IRS for unpaid employment withholding taxes (Claim No. 50). Their claim of subrogation rights is founded on 11 U.S.C. § 509.

The Debtor and Reorganized Debtor International Filter Corporation ("IFC") and the IRS have previously stipulated that Claim No. 51 be allowed as a pre-petition, priority tax claim in the sum of $11,739.94. That stipulation has been approved, and all payments to the IRS are being applied first to Claim No. 51 pursuant to the Order Re Interim Disposition of Claim Nos. 50 and 51 of Internal Revenue Service, entered May 14, 1986.

Huweiler entered into a comprehensive Mutual General Release with IFC, executed and incorporated in the Debtor's confirmed Third Modified Plan ("the Plan"). Huweiler (Class 5) was to receive $60,000.00 under the Plan. The Huweiler compromise was approved and the Plan confirmed after notice and hearing held on November 26, 1985. The Order Confirming the Debtor's Third Modified Plan was entered on December 13, 1985, and has become final without appeal.

The IRS levied on proceeds which Huweiler was to have received from IFC and applied those funds ($49,536.56) to the debt for unpaid employment withholding taxes which the IRS alleges were owed by both IFC and derivatively its former president Loren Huweiler. Huweiler demands to be subrogated to the IRS's rights under Claim No. 50. IFC contends that the Mutual General Release bars Huweiler from asserting any claim against the Debtor, including—expressly—claims based on rights of subrogation.

Meantime, Huweiler is proceeding in another federal forum to seek a refund from the IRS, contesting both the validity of the debt and its collection from Huweiler.

The dispute at bar thus presents a most interesting question: Should a general re-

lease, which specifically includes release of all claims including those arising by way of subrogation, be given effect when the release is also expressly intertwined with confirmation of a Chapter 11 plan showing by way of contents and disclosure statement that the Debtor will pay certain IRS claims (to the extent allowed), which now form the basis for the alleged claim by way of subrogation?

The IRS benefits from a statute (26 U.S.C. § 6672), which allows the IRS to collect a 100% penalty from corporate officers and others who fail to pay over employee tax withholdings. The language of the statute and dicta of Circuit-level decisions make clear that the penalty is not in lieu of the employer's obligation, but in addition thereto. Section 6672(a) of the Internal Revenue Code states:

> (a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

See *Howard v. United States*, 711 F.2d 729, 733 (5th Cir.1983); *Moore v. United States*, 465 F.2d 514, 517 (5th Cir.1972); *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir.1970).

However, in actual practice and in its internal directives, the IRS restricts itself to collecting the amount owed only once—either from the employer or from the person(s) responsible for the failure to pay over the withheld taxes. See *Gens v. United States*, 615 F.2d 1335, 222 Ct.Cl. 407 (1980) (*dicta*); *Moore v. United States*, 465 F.2d 514, 516 n. 4 (5th Cir.1972); IRS Policy Statement P–5–60, approved May 30, 1984 (I.R. Manual MT 1218–157).

The parties seek a ruling on the issue of whether the general release bars Huweiler from asserting his claim for subrogation to the rights of the IRS even though resolution of the dispute is premature in some respects. First, Loren Huweiler denies that he is a responsible person within the meaning of 26 U.S.C. § 6672; Huweiler has sought a refund of the funds that the IRS seized. See the standards set forth in *Maggy v. United States*, 560 F.2d 1372, 1375 (9th Cir.1977); *Dudley v. United States*, 428 F.2d 1196, 1198 (9th Cir.1970); *Alioto v. United States*, 593 F.Supp. 1402, 1406 (N.D.Cal.1984).

Second, the IRS asserts the independence of its rights to collect from IFC and again from Huweiler under 26 U.S.C. § 6672. The IRS refuses to accede to the disallowance of $49,536.56 of its Claim No. 50, at least until after Huweiler's refund claim has been denied at the final judicial level. See *Gens v. United States*, 615 F.2d 1335, 222 Ct.Cl. 407 (1980).

■ Pending appellate review of my order, the parties have agreed to a sensible payment schedule under 11 U.S.C. § 1129(a)(9)(C) and the Plan so that the IFC payments to the IRS are allocated first on undisputed debts. I agree with the Debtor and Huweiler that the isolated issue of whether the release covers the Huweiler's claim to subrogation of the IRS debt to the extent of $49,536.56 is of sufficient finality, urgency and importance that it should be certified for appellate review even though the claim cannot be resolved yet and thus the decision is not a final order. I thus recommend to the United States District Court (or 9th Circuit Bankruptcy Appellate Panel) that leave be granted for appeal of the interlocutory order to be entered herein, and to the extent that the bankruptcy judge may do so, grant leave for appeal of the interlocutory order so that the important issue presented may be resolved on appeal while the IFC payments to the IRS are being applied to other debts.

■ The Settlement and Release Agreement was conditioned upon confirmation of

the Plan. The Plan called for IFC (which was primarily liable for the unpaid employment withholding taxes) to pay Claim No. 50. Thus, the Mutual General Release should be read together with the Plan, and the illogical though very clever result sought by IFC from the wording of the release should not prevail. Both IFC and Huweiler were well aware that substantial IRS claims existed.

The IRS was pressuring Huweiler and had levied on the Huweiler residence. Thus, the claim was known. Huweiler contends that California law, expressly applicable to the Mutual General Release, permits the releaser of all claims, known and unknown, to show that he did not intend to release the claim in question. See California *Civil Code,* § 1542; *Casey v. Proctor,* 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579 (1963); *Vega v. Western Employers Insurance Co.,* 170 Cal.App.3d 922, 216 Cal.Rptr. 592 (1985); *Leaf v. City of San Mateo,* 104 Cal.App.3d 398, 163 Cal.Rptr. 711 (1980).

The Plan indicates that IFC will pay the IRS claims (Nos. 50 and 51) *and* the Huweiler (Class 5) claim in the amount of $60,000.00. The execution of the Mutual General Release occurred in the context of a Disclosure Statement and Plan showing IFC as the one to pay the IRS to the extent the claims were allowed. For IFC to establish successfully its contention that the release covered the undisclosed method of shifting the IRS claim(s) to Huweiler would take much clearer language.

The Mutual General Release recites its interrelationship with the Plan in paragraphs 2 and 10. The Disclosure Statement on which confirmation was in part based recites that tax claims "shall be paid" (p. 10, 1.7) and further that the Huweiler claim "shall be paid" (p. 10, 1.14). The existence of unpaid federal payroll taxes of approximately $50,000.00 is revealed in the Disclosure Statement (p. 4, 1.3) and in the Summary of Obligations, specifically listing IRS Claims 50 and 51 by number, classification and amount, but noting that an objection was pending (Exhibit A to Modified Disclosure Statement). Not sur-

prisingly, neither the Plan nor the Disclosure Statement nor the Mutual General Release reveal the potential for avoiding about $50,000.00 in tax liability for IFC by IRS collection from Huweiler under 26 U.S.C. § 6672.

To adopt IFC's version of the absolute nature of the language of the Mutual General Release would permit a windfall to the Reorganized Debtor which was not disclosed to the creditors, especially Huweiler, in the Disclosure Statement, contrary to the Congressional intent behind 11 U.S.C. § 1125.

Counsel for Huweiler may prepare and lodge a proposed order allowing Huweiler to be subrogated to the claim (No. 50) of the IRS, to receive payments after the completion of the payments on Claim No. 51 and the portion of Claim No. 50 which does not include or is not comprised of the Subrogation Demand. Pursuant to 11 U.S.C. § 509, the subrogee cannot be paid until the creditor is paid in full.

Further, no payment shall be made to Huweiler unless and until the IRS agrees or is determined by the court to have been paid in full. Any claim by Huweiler for subrogation for his liability under 26 U.S.C. § 6672 would be barred by the Mutual General Release except to the extent that the IRS accepts (or is judicially forced to accept) full payment once for the employer's and the responsible person's separate obligations.