David S. SHEEHAN and Barbara J. Sheehan, Plaintiffs-Appellants,

v.

ATLANTA INTERNATIONAL INSURANCE COMPANY and Integrity Insurance Company, Defendants-Appellees.

No. 85–6563.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1986.

Decided March 6, 1987.

(R.T. 373).

Lewis Graham, Sherman Oaks, Cal., for plaintiffs-appellants.

Donald K. Fitzpatrick and Valerie A. Gordon, Beverly Hills, Cal., Peter Szabadi, Los Angeles, Cal., for defendants-appellees.

Before WALLACE, SNEED and
SCHROEDER, Circuit Judges.

SNEED, Circuit Judge:

This is a diversity case involving the validity of a release signed as part of a settlement agreement in a personal injury case. The release purported to exonerate appellees Atlanta International Insurance Company (Atlanta) and Integrity Insurance Company (Integrity) from any and all liability to appellants David and Barbara Sheehan. The Sheehans, contending that part of the release was invalid, brought suit against Atlanta and Integrity for bad faith under California Insurance Code section 790.03, breach of contract, and intentional infliction of emotional distress. The district court held that the release was binding and granted appellees' motion for summary judgment on all claims. We affirm.

I.

*FACTS AND PROCEEDINGS BELOW*

On June 2, 1981, a truck in which David Sheehan was a passenger collided with a tractor-trailer rig owned by appellees' insured, Southwest Truck Service. As a result of this accident, Mr. Sheehan sustained serious injuries. Mrs. Sheehan later joined the suit against the appellees, claiming loss of consortium. The Sheehans retained Lewis Graham, a Los Angeles attorney, to represent them in the case. Much negotiation followed between the Sheehans and the appellees. Atlanta and Integrity initially offered $200,000 on December 20, 1983. That was followed by an offer of $500,000 on April 30, 1984. The Sheehans rejected each of these offers.

A jury trial in the Sheehans' lawsuit commenced on May 7, 1984, in Santa Barbara. The Sheehans' case was consolidated with other plaintiffs' claims against the appellees' insured arising out of the same accident. Thomas Foley, a Santa Barbara attorney representing co-plaintiffs Mr. and Mrs. Torbett, was appointed lead counsel for the plaintiffs by the trial judge, and conducted the examination of liability witnesses for all plaintiffs. On May 14, 1984, Atlanta and Integrity again raised their offer to $900,000. The Sheehans rejected this offer and counterdemanded $2,100,000.

On the morning of June 4, 1984, only a few days before the end of the trial, Foley and Graham entered into an agreement to protect Graham's clients, the Sheehans, whereby Foley would assist Graham in presenting the rest of the liability aspect of the case even if Foley's clients settled with the appellees before the end of trial. That same day Foley negotiated a settlement with the appellees for his original clients. Upon being informed of the Foley-Graham agreement, Atlanta and Integrity conditioned their settlement offer on Foley not representing the Sheehans during the rest of the trial. Foley chose not to represent the Sheehans because he did not want to jeopardize settling his original clients' claims against the appellees.

The Sheehans, not wanting to proceed without Mr. Foley, entered into an agreement with the appellees in open court to settle their claims for $1,275,000. Pursuant to the settlement proceedings conducted on June 4, the Sheehans signed a Release of All Claims, expressly waiving, *inter alia*, any bad faith claims against the appellees. On June 26, 1984, the Sheehans received a check in the full settlement amount from the appellees.

Less than one year later, on May 15, 1985, the Sheehans brought suit in district court against Atlanta and Integrity, alleging three causes of action: bad faith in violation of California Insurance Code section 790.03, breach of the settlement agreement, and intentional infliction of emotional distress. Integrity filed a counterclaim for breach of the settlement agreement, fraud, and negligent misrepresentation. The trial court concluded that the release extinguished the Sheehans' cause of action for bad faith and granted appellees' motions for summary judgment on all claims. The court, without reaching Integrity's counterclaim, entered final judgment on its summary judgment orders pursuant to Federal

Rule of Civil Procedure 54(b). The court stayed the counterclaim pending the outcome of this appeal. The Sheehans timely appealed the district court's judgment.

## II.

### VALIDITY OF THE APPEAL

■ As an initial matter, we must consider whether we have jurisdiction to rule on this appeal. Although no party contests jurisdiction, we address it sua sponte. *See Baumann v. Arizona Dep't of Corrections,* 754 F.2d 841, 843 (9th Cir.1985). Because Integrity's counterclaim was not decided and remained before the court, the district court entered a Rule 54(b) partial final judgment against the Sheehans. The district court expressly found, as required by Rule 54(b), that there was "no just reason for delay" in this case. We review for abuse of discretion. *McIntyre v. United States,* 789 F.2d 1408, 1410 (9th Cir. 1986).

■ The district court did not abuse its discretion in making the Rule 54(b) certification. We give deference to its finding that no just reason for delay exists because the lower court is " 'the one most likely to be familiar with the case and with any justifiable reasons for delay.' " *Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980) (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956)). The order and judgment fully dispose of the case between the Sheehans and Atlanta, and will likely aid in the expeditious decision of Integrity's counterclaim. The Rule 54(b) claims do not have to be separate from and independent of the remaining claims. *Alcan Aluminum Corp. v. Carlsberg Fin. Corp.,* 689 F.2d 815, 817 (9th Cir.1982). Thus, we have jurisdiction.[1]

## III.

### THE SUMMARY JUDGMENTS

#### A. Standard of Review

We review a grant of summary judgment de novo. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

#### B. Bad Faith Claim

The Sheehans' claim against Atlanta and Integrity for violation of section 790.03 of the California Insurance Code is barred by the express terms of the release. The Sheehans assert that the release of the bad faith claim is invalid because 1) they signed the release under duress; 2) it was not supported by separate consideration; and 3) a settlement that includes a release of bad faith claims violates public policy. We will address each of these claims separately.

##### 1. Duress

The Sheehans argue under two theories that they were coerced into signing the release. First, they contend that the appellees' tortious interference with their right to representation by Foley left them with no choice but to agree to release their bad faith claim. Second, they argue that they signed the release under economic duress and that Atlanta and Integrity knowingly took advantage of their poor financial condition.

We note that the Sheehans do not seek to avoid the entire release. They wish to keep the settlement amount as compensation for their injuries caused by the appellees' insured. The Sheehans argue that only the part of the settlement agreement

1. In *Morrison-Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981), we stated that "[t]he trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order." However, we have held that the lack of *Morrison-Knudsen* findings is not a jurisdictional defect. *Alcan Aluminum Corp.,* 689 F.2d at 817. Therefore, although the district court in this case failed to make such findings, we are free to decide that the Rule 54(b) order is valid.

releasing bad faith claims was entered into under duress.

a. *Tortious Interference with Representation Right*

■ In *In Re Marriage of Gonzalez*, 57 Cal.App.3d 736, 743–44, 129 Cal.Rptr. 566, 570 (1976) (quoting *Balling v. Finch*, 203 Cal.App.2d 413, 418, 21 Cal.Rptr. 490, 493 (1962)), the California Court of Appeal stated:

> [A] contract ... obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress....

The alleged wrongful interference by appellees with the prospective attorney-client relationship between the Sheehans and Foley cannot serve as a basis for finding duress. In the first place, any threatened action had been carried out before the Sheehans signed the release. They could have declined the settlement inasmuch as the worst had already befallen them. At the time the Sheehans signed the release, Foley had already agreed with appellees not to represent the Sheehans. There was simply no threat of impending action that coerced the Sheehans into releasing the bad faith claim.

b. *Economic Duress*

■ Alternatively, the Sheehans argue that they were economically coerced because the appellees exercised bad faith in the negotiation process, and thereby exploited the Sheehans' impecuniousness and forced them to agree to the terms of the release in order to avoid financial disaster. Economic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin. *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal.App.3d 1154, 1158–59, 204 Cal.Rptr. 86, 89 (1984). The wrongful act must be "sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Id.* at 1158, 204 Cal.Rptr. at 89.

■ The Sheehans argue that Atlanta and Integrity required, as a necessary condition to any settlement, that the Sheehans release any claim for bad faith. They contend that placing such a condition on the settlement was wrongful, and that because of their precarious financial situation, they were under duress to sign the release in order to get paid. The Sheehans point to nothing in the record that shows that the appellees gave them such an ultimatum. In fact, the Sheehans could not possibly know whether the appellees would have agreed to settle only if the settlement contained a release of bad faith claims because they never objected to the terms of the settlement. They assented to the settlement, including a release of bad faith claims, in open court without objection. Excerpt of Record at 256–62. Furthermore, they signed the Release of All Claims without objecting to any of its terms. Thus, there is no evidence in the record from which a reasonable trier of fact could find that the Sheehans initially did not intend to relinquish their bad faith claim, but later did so because they were coerced by appellees' ultimatum.

■ Simple hard bargaining must not be confused with economic coercion. The doctrine of economic duress is designed to "preclude the wrongful exploitation of business exigencies to obtain disproportionate exchanges of value." *Rich & Whillock*, 157 Cal.App.3d at 1159, 204 Cal.Rptr. at 90. While we recognize the court's role in protecting persons from economic exploitation, we also note the importance of the notion of freedom of contract and the desirability of finality of private dispute resolutions. *See Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 21 (Alaska 1978). Under the circumstances of this case we find, as a matter of law, that appellees' conduct did not constitute economic duress.

2. *Lack of Consideration and Lack of Intent*

■ The Sheehans argue that the release of bad faith claims is invalid because

it was not supported by separate consideration. This argument is meritless because California courts have long held that "where the writing is plain and explicit and given for the express purpose of effecting a complete release of the obligation, a consideration is not necessary." *Crow v. P.E.G. Constr. Co.*, 156 Cal.App.2d 271, 277, 319 P.2d 47, 50 (1957); *see* Cal.Civ. Code § 1541.

▪ The Sheehans also contend that their settlement of the underlying case was never intended to include a release of bad faith claims. But when the language of a written release is not ambiguous, "the intention of the parties is to be ascertained from the writing alone." *Crow*, 156 Cal. App.2d at 277, 319 P.2d at 50. "[I]n arriving at one's intentions, courts cannot be guided by an unexpressed state of mind." *Id.* at 278, 319 P.2d at 51. Here, the Sheehans' reservations, if any, about releasing bad faith claims were unexpressed and cannot contradict the explicit terms of the release.

### 3. Public Policy

▪ Finally, the Sheehans contend that a release of bad faith claims violates public policy and is therefore unenforceable. We find that California law suggests otherwise. The court of appeal in *Vega v. Western Employers Insurance Co.*, 170 Cal. App.3d 922, 216 Cal.Rptr. 592 (1985), reversing a grant of summary judgment, held that a triable issue of fact existed regarding whether the parties intended a release of the insurer from "any and all claims" to include a release of an action for bad faith. *Id.* at 927, 216 Cal.Rptr. at 595–96. Although the *Vega* court does not squarely address the question, it seems to suggest that if bad faith claims were explicitly released, the release would be enforceable. *Id.* at 926, 216 Cal.Rptr. at 595. We decline to hold that a release of bad faith claims is against public policy.

### C. Breach of Settlement Agreement

▪ In a court proceeding on June 4, 1984, the parties agreed to settle for the sum of $1,275,000, payable "forthwith."

The Sheehans received a check in the proper amount on June 26, and collected on the draft on July 13, 1984, thirty-nine days after the initial settlement in court. They contend that payment "forthwith" means payment "immediately and promptly," and that the appellees breached the settlement agreement by delaying payment.

The appellants received payment twenty-two, not thirty-nine, days after the date of the settlement agreement. Under California law, when a check is honored upon presentation to the drawee bank, payment relates back to the date the check was delivered. *Ogier v. Pacific Oil & Gas Dev. Corp.*, 135 Cal.App.2d 776, 778–79, 288 P.2d 101, 103–04 (1955).

California courts have stated that "[t]he term 'forthwith' is not in law to be necessarily construed as a time immediately succeeding without an interval," *N.C. Roberts Co. v. Topaz Transformer Prods., Inc.*, 239 Cal.App.2d 801, 817, 49 Cal.Rptr. 209, 220 (1966), and that due to its lack of specificity, the term only imposes an obligation of performance within a reasonable time, *Wong v. DiGrazia*, 60 Cal.2d 525, 535–36, 386 P.2d 817, 824–25, 35 Cal.Rptr. 241, 248–49 (1963). We find, as a matter of law, that payment within twenty-two days of the in-court settlement was payment within a reasonable time, and thus the appellees did not breach that part of the settlement agreement requiring them to pay "forthwith."

### D. Intentional Infliction of Emotional Distress

▪ The Sheehans argue that Atlanta and Integrity delayed the payment of the agreed settlement amount for the specific purpose of causing them emotional distress. Because we find that the appellees' payment was timely, this cause of action also fails.

The judgment of the district court is AFFIRMED.