61 F.3d 912
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Teodoro A. UNARCE, Jr., Plaintiff-counter-defendant-Appellant,
v.
STAFF BUILDERS, INC., Defendant-counter-claimant-Appellee.
Teodoro A. UNARCE, Jr., Plaintiff-counter-defendant-Appellee,
v.
STAFF BUILDERS, INC., a New York corporation; Staff Builders
International, Inc., a New York corporation; Staff Builders
Services, Inc., a New York corporation,
Defendants-counter-claimants-Appellants.
 Nos. 93-16984, 93-17094.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1995.
July 13, 1995.
 
 Before: TANG, SCHROEDER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 California resident Teodoro A. Unarce, Jr. purchased a franchise from Staff Builders, Inc. ("Staff Builders"), a New York Corporation, to operate a visiting nurse facility in San Jose, California. After 16 months of operation, Unarce and Staff Builders agreed to terminate the franchise, and Unarce signed a release relinquishing any and all claims he may have had against Staff Builders. Both the termination agreement and the release contained a choice-of-law provision designating New York law as the law governing the interpretation and enforcement of the documents.
 
 
 3
 Subsequently, Unarce brought an action against Staff Builders for claims arising out of the purchase and operation of the franchise. Staff Builders filed a counterclaim for litigation expenses contending Unarce's action breached the covenant not to sue contained in the release. Unarce, in turn, claimed the release and termination agreement were invalid because he signed the documents under economic duress. The district court granted Staff Builders' motion for partial summary judgment after determining that under New York law the release was valid and not a product of economic duress. The district court subsequently denied, however, Staff Builders' claim for attorney's fees.
 
 
 4
 Both parties timely appeal. Unarce asserts the district court erred by (1) applying New York law to the economic duress analysis; and (2) finding Unarce's execution of the release and termination agreement was voluntary. On its cross appeal, Staff Builders contends the district court ignored controlling law. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 DISCUSSION
 1. Choice-of-law
 
 5
 Unarce first contends the district court erred by applying New York law to his duress claim. Because jurisdiction over this case is based on diversity, we are required to "apply the conflict-of-law principles of the forum state." S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co., 641 F.2d 746, 749 (9th Cir. 1981).
 
 
 6
 The California Supreme Court recently considered for the first time the enforceability of a contractual choice-of-law provision. Nedlloyd Lines B.V. v. Superior Court, 834 P.2d 1148, 1150 (Cal. 1992). In so doing, the court decided that a choice-of-law provision should be given effect so long as the application of the chosen state's law does not violate the conflict-of-law principles embraced by section 187 of the Restatement (Second) of Conflict of Laws ("Restatement"). Id. at 1151 (quoting section 187(2)).
 
 
 7
 Section 187 indicates, however, that conflict-of-law principles should not be used to give effect to a choice-of-law provision where the validity of the agreement containing the provision is being challenged. See Restatement Sec. 187 cmt. b (whether consent to the inclusion of a choice-of-law provision was in fact obtained by duress should be "determined by the forum in accordance with its own legal principles"). Thus, when a California court is faced with a challenge to a contract's validity, before the court can apply a choice-of-law provision it must determine whether the agreement containing the clause is invalid under California law. See Restatement Sec. 187 cmt. b, illus. 3 (forum state should first apply its own legal principles to determine whether a contract presented on a "take-it-or-leave" basis is invalid); Bos Material Handling, Inc. v. Crown Controls Corp., 137 Cal. App. 3d 99, 107-08 (Cal. Ct. App. 1982) (same); Gamer v. duPont Glore Forgan, Inc., 65 Cal. App. 3d 280, 285-89 (Cal. Ct. App. 1976) (same).
 
 
 8
 Here, Unarce claims that Staff Builders presented the termination agreement and release on a "take-it-or-leave it" basis, and that because of economic duress he was forced to accept all proffered terms, including the choice-of-law clause. Under these circumstances, the district court should have applied relevant California law to test the legitimacy of Unarce's economic duress claim before considering the choice-of-law provision in the release.
 
 2. Unarce's Economic Duress Claim
 
 9
 In Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal. App. 3d 1154 (Cal. Ct. App. 1984), the California Court of Appeal stated the standard for evaluating an asserted economic duress claim: "[T]he doctrine now may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Id. at 1158. Thus, under California law, Unarce must establish (1) that a wrongful act by Staff Builders caused Unarce to sign the release; and (2) that Unarce had no reasonable alternative but to execute the agreement.
 
 
 10
 a. The Wrongful Act Requirement
 
 
 11
 Wrongful acts for purposes of the economic duress doctrine include (1) the assertion of a claim known to be false, or (2) a bad faith threat to breach a contract or to withhold a payment. Id. at 1159. In contrast, Unarce contends the wrongful conduct in this case consisted of Staff Builders' threat to withdraw its termination offer. Unarce suggests that Staff Builders was under an obligation to terminate the franchise because Staff Builders' alleged misrepresentations in inducing the franchise purchase caused Unarce to suffer continuing financial harm.
 
 
 12
 A threat to withdraw a termination offer is not, however, among those acts recognized as "wrongful" in Rich & Whillock. In the absence of a legal duty to terminate the franchise agreement, we cannot conclude that Staff Builders' threat to withdraw the offer was a wrongful act. See Sheehan v. Atlanta Int'l Ins. Co., 812 F.2d 465, 469 (9th Cir. 1987) ("Simple hard bargaining must not be confused with economic coercion."). And we are unable to locate any relevant California authority supporting Unarce's contention that an allegation of wrongful conduct involving the franchise purchase imposes a duty upon the franchiser to make an irrevocable offer to extinguish the franchise agreement. Indeed, this court recently considered and rejected an argument comparable to the one Unarce now advances. See Gruver v. Midas Int'l Corp., 925 F.2d 280 (9th Cir. 1991)[1]. On facts similar to the present case, we refused to transform the plaintiffs' allegations of fraudulent behavior involving the franchise purchase into a wrongful act under the economic duress analysis. Id. at 282.
 
 
 13
 In Gruver we concluded that where "the alleged misrepresentations did not involve the termination agreements" but instead "involve[] the original franchise agreements ... they are not wrongful acts for the purpose of the economic duress analysis." Id. Our decision was grounded on the common sense observation that if allegations involving the franchise purchase "could be sufficient for economic duress, one could never enter into an enforceable release of a claim for allegedly tortious conduct which caused another party financial distress." Id. For similar reasons, we decline the invitation to erect a rule that could potentially invalidate a negotiated release agreement anytime a financially distressed franchisee alleges the franchise purchase was fraudulently induced. See Sheehan, 812 F.2d at 469 (recognizing the "importance of the notion of freedom of contract and the desirability of finality of private dispute resolutions"). Because we reject Unarce's contention that Staff Builders was under a duty to terminate the franchise agreement, we also reject Unarce's contention that Staff Builders' threat to withdraw the termination offer was wrongful conduct within the meaning of Rich & Whillock.
 
 
 14
 This case might be different if Staff Builders had acknowledged the merits of Unarce's claims, but traded on Unarce's financial weakness to force an unfair settlement agreement. Cf. Rich & Whillock, 157 Cal. App. 3d at 1159 (wrongful conduct includes bad faith threats not to perform an obligation that is owed to the other party). But like the plaintiffs in Gruver, Unarce has "presented no evidence that [Staff Builders] acknowledged the merit of [Unarce's] alleged damages, yet in bad faith refused to settle these claims for that amount." Gruver, 925 F.2d at 282 (distinguishing Rich & Whillock).
 
 
 15
 Accordingly, we conclude that Unarce has failed to demonstrate that Staff Builders' acts were wrongful for purposes of an economic duress claim.
 
 
 16
 b. The No Reasonable Alternative Requirement
 
 
 17
 Unarce also fails to show he lacked a reasonable alternative to signing the release. In fact, according to his own declarations, at the time the termination agreement was executed Unarce owned 3 properties and enjoyed a positive net worth. Unarce estimates that if he had not agreed to terminate the franchise he might have become insolvent within two years. This evidence fails to demonstrate that Unarce's only reasonable alternative was to succumb to Staff Builders' termination offer because "the only other alternative [was] bankruptcy or financial ruin." Rich & Whillock, 157 Cal. App. 3d at 1159.
 
 
 18
 On the evidence Unarce submitted, a rational trier of fact could not find that the essential elements of economic duress were present in this case. We accordingly conclude that the release is valid and that all of Unarce's claims are extinguished. The district court properly granted Staff Builders' motion for summary judgment.
 
 3. Staff Builders' Cross Appeal
 
 19
 Staff Builders contends the district court erred by refusing to award attorney's fees as damages for Unarce's breach of the covenant not to sue.[2] With the validity of the release no longer in issue, we must resolve Staff Builders' cross appeal in accordance with the state law identified in the choice-of-law provision unless the application of the chosen state's law is contrary to California conflict-of-law principles. We conclude that the application of New York law to Staff Builders' counterclaim does not violate a fundamental California public policy, see Restatement Sec. 187, and we therefore give effect to the choice-of-law provision contained in the release.
 
 
 20
 Under New York law, unless the covenant specifically provides for the award of attorney's fees, a party will be entitled to litigation damages only if the suit was "brought in obvious breach [of the covenant not to sue] or otherwise in bad faith." Artvale, Inc. v. Rugby Fabrics Corp., 363 F.2d 1002, 1008 (2d Cir. 1966).
 
 
 21
 In Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523 (2d Cir. 1985), the Second Circuit applied the Artvale standard to facts analogous to the instant case. The court cautioned that it would not read a covenant that made no clear provision for the recovery of litigation expenses, "'without more, as intended to subject to damages a plaintiff who claimed in good faith that it had been obtained by unfair means."' Id. at 529 (quoting Argonaut, 363 F.2d at 1008). The district court had made expressed findings
 
 
 22
 (1) that the settlement agreement contained no language suggesting that such damages were intended by the parties; (2) that the agreements did not provide that no suit could be brought on the ground that agreements themselves had been fraudulently induced [;] ... and (3) that, as plaintiffs had at least one nonfrivolous ground for their lawsuits, the suits were not brought in bad faith.
 
 
 23
 Id. Based on these findings, the Bellefonte court affirmed the district court's decision to deny the cross-appellants litigation expenses. Id.
 
 
 24
 Here, the district court expressly relied on the court's reasoning in Bellefonte, and made an identical set of findings. The district court determined that the covenant did not specifically provide for the award of attorney's fees and did not preclude a suit challenging the validity of the release. The district court also concluded that Unarce's duress claim was a legitimate attempt to test the validity of the agreements, and therefore Unarce's suit was neither frivolous nor an obvious breach of the covenant not to sue.
 
 
 25
 On appeal, Staff Builders argues that the Bellefonte court misapplied New York law and contends that Lubrizol Corp. v. Exxon Corp., 957 F.2d 1302 (5th Cir.), cert. denied, 113 S. Ct. 186 (1992) and Cefali v. Buffalo Brass Co., Inc., 748 F. Supp. 1011 (W.D. N.Y. 1990), supply the correct analysis. We disagree. Neither Lubrizol nor Cefali involved a challenge to the validity of the release and in that regard they are distinguishable from the instant case and Bellefonte. In sum, the Bellefonte case is closely analogous to the present case, and we conclude the district court correctly relied on that decision.
 
 CONCLUSION
 
 26
 The judgments of the district court dismissing the complaint and the counterclaim are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We recognize the Gruver case arose under Oregon law, but in resolving the economic duress issue presented in that controversy, we drew on case law from other states, including California. See 925 F.2d at 282 (citing to Rich & Whillock, 157 Cal. App. 3d 1154 (Cal Ct. App. 1984))
 
 
 [2]
 The applicable provision reads:
 RELEASOR covenants not to sue RELEASEES or bring any action or proceeding (or participate in or join in or otherwise act in concert with any action) against RELEASEES with respect to any matter relating to the franchise or the operation of the Office prior to the date hereof, any matter released hereunder or any matter related thereto.
 E.R. at 320.