106 F.3d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ARCON/PACIFIC LTD., a limited partnership, by and through
Arcon, Inc., a corporation, general partner;
Arcon, Inc., a corporation individually,
Plaintiffs-Counter-Defendants-Appellants,
v.
Estate of Robert S. COIT; Estate of Benjamin Coit; Michael
Coit; Harold Pink,
Defendants-Counter-Claimants-Appellees.
ARCON/PACIFIC LTD., a limited partnership, by and through
Arcon, Inc., a corporation, general partner;
Arcon, Inc., a corporation individually,
Plaintiffs-Counter-Defendants-Appellees,
v.
Estate of Robert S. COIT; Estate of Benjamin Coit; Michael
Coit; Harold Pink, Defendants-Counter-Claimants-Appellants.
 No. 93-17313, 94-15036.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 1996.
Decided Dec. 24, 1996.
 
 1
 Appeal from the United States District Court for the Northern District of California, D.C. No. CV-81-04264-VRW, D.C. No. CV-81-04264-VRW; Vaughn R. Walker, District Judge, Presiding.
 
 
 2
 N.D.Cal.
 
 
 3
 AFFIRM in Part REVERSED in Part.
 
 
 4
 Before: O'SCANNLAIN and LEAVY, Circuit Judges, and MOSKOWITZ,** District Judge.
 
 
 5
 MEMORANDUM*
 
 
 6
 Arcon/Pacific Ltd. ("APL"), a limited partnership, and its general partner, Arcon, Inc. ("Arcon"), appeal from the district court's grant of summary judgment in favor of Class II limited partners, the estate of Robert S. Coit, the estate of Benjamin Coit, Michael Coit, and Harold Pink (collectively the "Coits"), on the Coits' claims that APL and Arcon breached contractual and fiduciary duties by failing to distribute "spendable funds" to the Coits according to the requirements of the partnership agreement. The Coits cross-appeal from the district court's grant of summary judgment in favor of Arcon and APL on Arcon's and APL's contention that a letter agreement with the Coits should be rescinded based on coercion or duress.
 
 
 7
 We affirm in part and reverse in part.
 
 
 8
 1. Disbursements of Spendable Funds under the Partnership Agreement
 
 
 9
 We review de novo the interpretation of a contract. The Crow Tribe of Indians v. Racicot, 87 F.3d 1039, 1045 (9th Cir.1996). "Whether the written contract is reasonably susceptible of a proffered meaning is a matter of law that is reviewed de novo." Brinderson-Newberg J.V. v. Pacific Erectors, Inc., 971 F.2d 272 (9th Cir.1992), cert. denied, 113 S.Ct. 1267 (1993).
 
 
 10
 Resolution of Arcon and APL's claim depends upon whether the funds used by APL to repay Arcon for its "loans" were paid out of "spendable funds" as defined by § 3.06 and other relevant provisions of the partnership agreement. We hold that the funds used to repay Arcon were "spendable funds" of the partnership and should have been distributed to the Coits according to the partnership agreement.
 
 
 11
 Section 3.06 of the partnership agreement defines any "advance" or "loan" from a partner to or on behalf of the partnership as "a debt due from the Partnership to such partner."
 
 
 12
 3.06 Loans by the Partners. If the General Partner or any Limited Partner shall, upon consent of the General Partners, make loans or lend money to the Partnership or advance monies on its behalf, the amount of any such loan or advance shall not be an increase of his capital contribution or entitle him to any increase in his share of the profits or distributions of the Partnership, nor subject him to any greater proportion of the losses which it may sustain, but the amount of any such loan or advance shall be a debt due from the partnership to such partner[.]
 
 
 13
 ER Exh. 12 at 14 (emphasis added). Under this provision, funds loaned or advanced from Arcon to APL constituted a partnership debt to Arcon.
 
 
 14
 The partnership agreement goes on to define "spendable funds" as the excess of all funds received by the partnership over its costs, other than any amount paid or accrued on a "debt to a partner."
 
 3.09 Distribution of Spendable Funds
 
 15
 (a) As used in this Agreement, the term "Spendable Funds" for any year of the Partnership shall mean the excess, if any of (a) the funds which the Partnership shall receive from (i) the operations, (ii) the sale of its assets; (iii) borrowing or refinancings by it; and (iv) any other source for such year over (b) the total of all expenses, reserves and all amounts paid or accrued by or on behalf of the Partnership in such year on account of the amortization of any debts or liabilities of the Partnership, other than debts to Partners.
 
 
 16
 ER Exh. 12 at 19 (emphasis added).
 
 
 17
 APL and Arcon offer two arguments in support of their contention that the repayments to Arcon were properly deducted from inflows in arriving at "spendable funds" as defined in § 3.09. We find no merit in either argument.
 
 
 18
 First, APL and Arcon argue that the district court misread that portion of § 3.09 which provides that spendable funds are the amount of all inflows "over (b) the total of all expenses, reserves and all amounts paid or accrued by or on behalf of the Partnership in such year on account of the amortization of any debts or liabilities of the Partnership, other than debts to Partners." APL and Arcon argue that the phrase "other than debts to Partners" applies only to "accrued ... debts or liabilities of the Partnership." On this reading, any amounts actually paid as repayment of a loan from a partner would be deducted from inflows in calculating spendable funds. This, however, is a truncated reading of § 3.09 inconsistent with the more specific provisions of § 3.06 and the agreement taken as a whole. The contract clearly states that payments as well as accruals of debt with respect to partners are not to be excluded from "spendable funds."
 
 
 19
 Second, APL and Arcon argue that the loans from Arcon to APL are "advances," and their repayment should be deducted as an "expense" of the Partnership as provided by § 2.04(b). This section provides: "The General Partner shall be entitled, as an expense of the partnership, to advances and reimbursement of all expenditures incurred on behalf of the Partnership and its business." ER Exh. 12 at 11 (emphasis added).
 
 
 20
 Section 3.09, however, allows the deduction of an expense in arriving at "spendable funds" only so long as it does not constitute a "debt to a partner." Section 3.06 specifically defines "a debt to a partner" to include any advance or loan made by a partner on behalf of the partnership. Taking these provisions together, and giving effect to more specific terms over the more general, the Partnership Agreement is unambiguous. See Brinderson-Newberg, 971 F.2d at 279 (usual rule of interpretation provides that more specific provisions govern more general provisions); Autry v. Republic Prods., 180 P.2d 888, 893 (Cal.1947); Restatement (Second of Contracts § 203(c) & cmt. e (1979). The General Partner is entitled pursuant to § 2.04(b) to receive advances and reimbursement for sums paid on behalf of the Partnership, and, apart from the specific exception created by §§ 3.06 and 3.09 for "advances" made by the partner, repayment of those funds would constitute an "expense" of the partnership and reduce spendable funds. Because, however, the advances from Arcon to APL constitute a debt owed to a partner from the partnership, as provided by § 3.09, their repayment cannot be subtracted from total inflows to arrive at "spendable funds."
 
 
 21
 The money transferred to APL by Arcon, whether characterized as a "loan" or an "advance," created under § 3.06 "a debt due from the partnership to such partner." Reading § 3.09 in light of § 3.06, we conclude that any amounts repaid to Arcon by APL on this "debt to a partner" were not to be deducted in arriving at "spendable funds." Accordingly, the district court did not err in concluding that the funds paid to Arcon should have been included in spendable funds, and those funds should have been distributed in the manner provided by § 3.09(b)(1)-(5) of the Partnership Agreement.
 
 
 22
 This subsection requires that,
 
 
 23
 [f]or each year of the Partnership the Spendable Funds ... shall be used as follows and in the following order or priority:
 
 
 24
 (1) First, for the payment of ... Notes of the Partnership held by those Class I Limited Partners ... and for repayment of advances made by such Partners;
 
 
 25
 (2) ... [F]or the setting up and maintenance of any reserves required or permitted to be maintained by the terms of the Junior Subordinated Notes of the Partnership;
 
 
 26
 (3) Then, for the payment of Notes ... held by Class II Limited Partners.
 
 
 27
 (4) Then, until such time as Two Hundred Thousand Dollars ($200,000) is paid to the Class II Limited Partners, the balance of the Spendable Funds of the Partnership shall be distributed to the Class II Limited Partners.
 
 
 28
 (5) Then, until such time as all indebtedness of the Partnership to Partners is paid, ninety-five percent (95%) of the balance of the Spendable Funds of the Partnership shall be used for the payment of Junior Subordinated Notes of the Partnership held by the General Partners.... and for the repayment of advances made by such partners, and five percent (5%) of the balance of the Spendable Funds of the Partnership shall be distributed to the Class II Limited Partners.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 ER Exh. 12 at 19-20 (emphasis added).
 
 
 32
 While repayment of the $200,000 of Class II limited partners' capital contributions under subsection (4) may have otherwise been in the discretion of the General Partner under § 3.05,[1] to the extent of spendable funds, their distribution was governed by the specific provisions of § 3.09(b).
 
 
 33
 Since none of the parties claim that any payments under subsection (1)-(3) are at issue, distributions should have been made out of "spendable funds" as defined in § 3.09(b)(4). Because the Coits collectively made up 76.5% of the Class II Limited Partners, the district court correctly determined that the Coits were entitled to $153,000 as their 76.5% of the $200,000 of spendable funds calculated without deducting APL's loan repayments to Arcon. Similarly, the district court correctly determined that the Coits were entitled to 3.825% (i.e., their proportionate 76.5% share of the 5% distribution to Class II Limited Partners under 3.09(b)(5)) of the amounts repaid to Arcon.
 
 
 34
 Arcon argues that it should not be held jointly liable with the limited partnership, APL, for the return of spendable funds. It relies on § 3.05 of the partnership agreement which provides that a "general partner shall not be personally liable for the return of the capital or any other contributions of the limited partners, or any portion thereof and any such return shall be made only from partnership assets."
 
 
 35
 We reject Arcon's contention. While § 3.05 may be applicable in other circumstances, it does not control in this instance where Arcon was erroneously repaid from "spendable funds." Arcon is merely required to return partnership assets which it improperly received. There is nothing inconsistent with this conclusion and § 3.05.
 
 
 36
 APL and Arcon also challenge the district court's determination of the rate of prejudgment interest on the damages awarded to the Coits. "In a diversity case, state law controls the award or denial of prejudgment interest." Safeway Stores, Inc. v. National Union Fire Ins. Co. of Pittsburgh, 64 F.3d 1282, 1290 (9th Cir.1995). We review the award of prejudgment interest for an abuse of discretion. Adams v. Johns-Manville Corp., 876 F.2d 702, 704 (9th Cir.1989).
 
 
 37
 In its Order of August 5, 1991, the district court awarded simple 7% per annum prejudgment interest under Cal.Civ.Code § 3287.[2] It later revised its decision relying on Cal.Civ.Code § 3289[3] and awarded the Coits prejudgment interest at the rate set for a loan from a partner to the partnership covered by § 3.06 of the Partnership agreement.
 
 
 38
 The district court concluded that the spendable funds improperly withheld by APL from the Coits should be treated as a voluntary loan:
 
 
 39
 Here the retention by the partnership of the amounts set forth in the August 5 order at 4-6, although not formally loaned to the partnership by the defendants, was the functional equivalent of a voluntary loan to the partnership. The partnership benefitted from the retention of funds just as it would have benefitted from an explicit, formal loan from defendants under p 3.06 of the partnership agreement. Accordingly, the court's August 5 summary judgment order is MODIFIED to calculate the judgment at the rate of 1% over the Bank of America prime rate.
 
 
 40
 ER Exh. 6 at 2-3.
 
 
 41
 The partnership agreement, however, provides no interest for damages caused by the limited partnership's failure to distribute spendable funds, or for a breach of the partnership agreement in general. Hence, there is no basis for determining prejudgment interest according to the contract. Cf. Michelson v. Hamada, 36 Cal.Rptr.2d 343, 353 (Cal.App.1994) (where contract did not stipulate a rate of interest after breach, the 7 percent rate applies).
 
 
 42
 Absent any contract rate, prejudgment interest should be awarded under § 3287 and not § 3289. APL and Arcon's argument that no interest should be paid on the capital contributions because the contract excludes interest on a return of capital contributions is meritless. Prejudgment interest under § 3287 is awarded as damages which are ascertained and vest on a particular day. Pursuant to § 3287, interest accrues from the date that the Coits were deprived of the funds to which they were otherwise entitled. We reverse the award of prejudgment interest under Ca.Civ.Code § 3289 and remand to the district court for a calculation of prejudgment interest pursuant to § 3287.
 
 
 43
 2. Rescission of the Letter Agreement between APL/Arcon and The Coits
 
 
 44
 In 1981, APL negotiated an agreement with third parties to form a joint venture to develop the Meridien Hotel ("Hotel"). In order to close the agreement, however, Arcon was required to certify that there was no pending or threatened litigation against the partnership. APL and Arcon had the right to enter into the agreement without the consent of and without the purchase of the Coits' interest. Prior to the closing, however, the Coits, represented by Robert S. Coit, delivered a handwritten letter which stated:
 
 
 45
 The undersigned representing certain members of the Class II limited partnership ... is advising the above that any agreements signed without the concurrence of the Class II limited partners, with the proposed TAG Houston Meridien Group is fraudulent and that suit will be instituted against all parties of such agreement within a short period of time.
 
 
 46
 See ER Exh. 11 at 4 (emphasis added).
 
 
 47
 Shortly before the deadline on the agreement, Arcon received a telex from the Coits which purported "to set forth our agreement concerning the acquisition of our Class II partnership interests." The "agreement" required Arcon to give to the limited partners--in return for their total 5% interest in the limited partnership,--(1) a five year, interest free, no recourse loan of $247,000 and (2) 5% of the difference between the fair market value of the hotel one year after it opened and the arbitrary sum of $55 million. Implicit in the "agreement" was an understanding that the limited partners would withdraw their threat of litigation and not block the transaction.
 
 
 48
 Arcon concluded, in the short time available to it, that it had no other alternative but to accept the agreement and certify that no litigation was pending or threatened against the partnership or the general partners. The transaction closed within the required time. After executing the agreement, however, Arcon notified the Class II limited partners that it would not honor it and offered to buy them out. All the Class II limited partners but the Coits accepted this offer.
 
 
 49
 We conclude that there was no error in the district court's findings that the Coits: 1) threatened litigation based on the failure to obtain their consent to the Hotel transaction; 2) knew their consent was not required; and 3) knew that the threat of litigation would prevent the closing of the Hotel transaction with disastrous consequences for the Arcon group.
 
 
 50
 Construing California law, we have stated,
 
 
 51
 [e]conomic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin. Rich & Whillock, Inc. v. Ashton Dev., Inc., 157 Cal.App.3d 1154, 1158-59, 204 Cal.Rptr. 86, 89 (1984). The wrongful act must be "sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Id. at 1158, 204 Cal.Rptr. at 89.
 
 
 52
 Sheehan v. Atlanta Intern. Ins. Co., 812 F.2d 465, 469 (9th Cir.1987). The Coits knowingly subjected Arcon and APL to the threat of wrongful litigation which left APL and Arcon with no reasonable economic alternative but to agree. We affirm the district court's grant of summary judgment in favor of APL and Arcon rescinding the letter agreement.
 
 
 53
 We do not reach APL and Arcon's appeal of the district court's denial of their request for attorneys' fees with respect to the rescission action. The district court denied attorneys' fees concluding that the rescission issue was only collaterally related to enforcement of the partnership agreement. APL waived this issue by failing to raise it in their opening brief, and the issue is only collaterally related to the Coits' cross-appeal. "Issues not raised in the opening brief are usually deemed waived." Dilley v. Gunn, 64 F.3d 1365, 1367 (9th Cir.1995). See also Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1434 (9th Cir.1993), cert. denied, 114 S.Ct. 1301 (1994).
 
 
 54
 Finally, APL and Arcon, as well as the Coits, argue that the district court's respective grants of summary judgment against them should be reversed due to procedural inadequacies. We reject this contention.
 
 
 55
 The district court has the power to grant summary judgment sua sponte. "Sua sponte summary judgment will be proper only when 1) no material dispute of fact exists, and 2) the losing party has had an adequate opportunity to address the issues involved, including adequate time to develop any facts necessary to oppose summary judgment." Fuller v. City of Oakland, 47 F.3d 1522, 1533 (9th Cir.1995).
 
 
 56
 The district court made it clear during the course of the protracted litigation that it was considering the question of whether there were issues of fact. The district court's request for argument and for presentation of evidence on the issues provided the parties with sufficient notice that the court was considering resolution of the issues by summary judgment.
 
 CONCLUSION
 
 57
 We AFFIRM the district court's grants of summary judgment on all issues except the prejudgment interest rate. We REVERSE the district court's determination of prejudgment interest and REMAND for calculation of prejudgment interest under Cal.Civ.Code. § 3287. Each party will bear its own costs on appeal.
 
 
 
 **
 The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 3.05 of the Partnership Agreement provides:
 Time for Return of Contributions.
 None of the partners, either General or Limited, shall be entitled to a return of the capital contributions made by any of them until the full and complete winding up and liquidation of the business and affairs of the Partnership, except as otherwise may hereafter be agreed upon by the General Partner. Any such prior return of capital contributions shall be applicable to all partners, both General and Limited, in proportion to their respective profit-sharing ratios[.]
 ER Exh. 12 at 14.
 
 
 [2]
 Section 3287 provides in relevant part:
 (a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.
 
 
 [3]
 Section 3289 provides in relevant part:
 (a) Any legal rate of interest stipulated by a contract remains chargeable after a breach of contract thereof, as before, until the contract is superseded by a verdict or other new obligation.