[No. B031563. Second Dist., Div. Five. Nov. 10, 1988.]

VINCENT EDWARDS et al., Plaintiffs and Appellants, v. COMSTOCK INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Erwin Sobel for Plaintiffs and Appellants.

LaFollette, Johnson, DeHaas & Fesler, Alfred W. Gerisch, Jr., and Melinda W. Ebelhar for Defendants and Respondents.

## OPINION

**BOREN, J.**—The trial court granted an insurer's motion for summary judgment against its insureds on the ground that the insureds, by signing a general release of all claims, had relinquished their right to pursue an action against the insurer for unfair claims settlement practices. We affirm.

### FACTS

In May of 1984, Vincent and Laura Edwards were injured in an automobile accident. The driver of the other vehicle was uninsured. The Edwards, through an attorney, presented a claim for damages to their own carrier, Comstock Insurance Company, under the uninsured motorist provisions of their policy. Comstock made a settlement offer to the Edwards within three weeks after receiving documentation of their claims, but the Edwards rejected it.[1] The rejection letter announced that the Edwards considered Comstock's offer to have been made in bad faith. A second offer from Comstock was likewise rejected, and the Edwards' attorney once again threatened to bring an action against Comstock for unfair claims settlement practices.

The Edwards' attorney delivered on his threats by filing suit against respondents on October 14, 1986. The complaint sets forth 11 causes of action alleging, in essence, that respondents acted according to a preconceived scheme designed to delay and underpay valid insurance claims against them.

On August 25, 1987, respondents filed the motion for summary judgment which concerns us here. In their motion, respondents presented evidence that the Edwards—before instituting their "bad faith" action—had accepted settlement payments of $5,000 and $6,750. In connection with this transaction, both of the Edwards had signed documents entitled "Release of All Claims" in which they agreed to release respondents "from any and all rights, claims, demands, actions, causes of action and damages of whatever kind whatsoever including general, special, compensatory and punitive damages known or unknown, whether in contract, tort or otherwise resulting from the loss sustained by [the Edwards] which occurred on or about May 2, 1984 at or near Los Angeles County, California." The releases also provide that the Edwards "understand and agree that this Release extends to and includes any and all damages, injuries, including, but not limited to emotional distress, and claims which were not anticipated, expected, known

---

[1] Vincent Edwards claimed $2,278 in special medical damages plus lost wages. Laura Edwards claimed $2,504 in medical damages plus lost wages. Comstock offered plaintiffs $3,800 and $4,400, respectively, plus lost wages in settlement. This offer was subsequently increased to $4,500 each.

about or suspected to exist, or claims which exist and to any and all damages, injuries or claims which may develop in the future." Respondents showed that the Edwards were represented by an attorney at the time the releases were signed.

In their opposition to respondents' motion for summary judgment, the Edwards do not deny signing the releases, but contend that their intent was only to release respondents from the personal injury claims. They each aver that "it was specifically not my intention to release the Comstock Insurance Company nor [*sic*] any of the other defendants from any claims for bad faith, unfair practices, or violations of California Insurance Code Section 790.03 which I might, and subsequently did, allege due to their handling of my uninsured motorist claim." They do not state that they communicated this intention to their insurer at the time they signed the "Release of All Claims."

The trial court granted respondents' motion for summary judgment. It concluded that parol evidence of the Edwards' intent not to release their bad faith claims was inadmissible to defeat the "clear and unambiguous" language of the release agreements, which bars "all" claims. The court added that even if extrinsic evidence were admitted to explain the release agreement, its judgment in favor of respondents would not be altered because the Edwards' intentions in regard to a bad faith suit were not disclosed to the respondents at the time the Edwards released them from all claims. The Edwards appeal from this judgment.

## Discussion

Appellants urge us to interpret the plain language in their release agreements discharging respondents from "any and all claims, demands, actions and causes of actions" to mean "all claims except claims for bad faith, unfair practices or violations of the Insurance Code." Under the circumstances presented here, we decline to rewrite appellants' release agreements to include a concept they failed to enunciate at the time they accepted the terms of the settlement with their insurer.

■ "The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding; but it is also a general rule that the assent of a party to a contract is necessary in order that it be binding upon him, and that, if the circumstances of a transaction are such that he is not estopped from setting up his want of assent, he can be relieved from the effect of his signature if it can be made to appear that he

did not in reality assent to it." (*Smith* v. *Occidental etc. Steamship Co.* (1893) 99 Cal. 462, 470-471 [34 P. 84].)

In the *Smith* case, the Supreme Court permitted the introduction of extrinsic evidence as proof that the circumstances surrounding the execution of a release indicated a lack of assent. The testimony showed that the releasor was incapacitated by his injuries and that he could not and did not read the release before signing it. (*Id.* at p. 471.) Similarly, releases were invalidated in *Tyner* v. *Axt* (1931) 113 Cal.App. 408 [298 P. 537], where an insurance adjustor extracted a release from a 60-year-old woman "suffering from nervous shock and . . . bodily injuries" (*id.* at p. 415) while she was still hospitalized shortly after an accident, and in *Megee* v. *Fasulis* (1943) 57 Cal.App.2d 275 [134 P.2d 815], where the releasor was induced by an insurance adjustor to sign a release while he was hospitalized and lacked funds to pay for treatment. By contrast, in *Haviland* v. *Southern California Edison Co.* (1916) 172 Cal. 601 [158 P. 328], the Supreme Court refused to allow a releasor to escape the effect of a release providing for a " 'discharge from any and all actions or causes of action, claims, demands and liability of every kind and nature whatsoever' " (*id.* at p. 607) when there was no evidence showing that the releasor was not in full possession of his faculties and did not know the meaning of the words to which he was agreeing. Said the court, "The plaintiff knew that he was signing a paper which, by its plain terms, released the defendant from liability. He was under no misapprehension regarding its language or its meaning. His claim is that he was deceived into the belief that the paper was not binding, or, in other words, that it did not mean what it said. If evidence to this effect could be regarded as sufficient to establish a mistake of law, there would be little binding force in written agreements, knowingly and voluntarily executed by competent parties in full possession of the facts." (*Id.* at p. 610.)

 In this case, the Edwards presented no evidence showing that they labored under any physical or mental disability that might have furnished an opportunity for overreaching by their insurer within the scope of *Smith* v. *Occidental Steamship, supra.* Nor did they declare that they were unable to comprehend the plain language of the release agreement. There was no evidence indicating that the Edwards placed such trust and confidence in their insurer that they were not dealing at arm's length when they negotiated the settlement and release. (*DuBois* v. *Sparrow* (1979) 92 Cal.App.3d 290, 300-301 [154 Cal.Rptr. 717].) In fact, the evidence shows that the Edwards adopted an adversarial stance toward their insurer from the outset by hiring their own lawyer, then threatening to bring a bad faith action as soon as Comstock made its first settlement offer. Moreover, the Edwards' repeated threats throughout the settlement negotiations to institute a bad faith action against Comstock establish that any injury or damage to the

Edwards caused by respondents' settlement practices were known to the Edwards at the time they executed the release. This removes the Edwards' suit from that category of claim not covered by a general release because its existence was unknown or unsuspected by the parties when the release was executed (a "later discovered injury"). (Civ. Code, § 1542; *Casey* v. *Proctor* (1963) 59 Cal.2d 97, 102, 112 [28 Cal.Rptr. 307, 378 P.2d 579].) Because appellants knew they had a claim for unfair practices against respondents, they had a duty to specifically exclude that claim from the release agreement. Otherwise, by releasing "all" claims, appellants gave the misleading impression that they were abandoning their threatened bad faith action in return for respondents' payment. Finally, the complaint does not allege, nor do appellants argue, that the instant lawsuit seeks damages for misconduct by the respondents occurring *after* the date the release was executed. (See *Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390, 404-405 [177 Cal.Rptr. 398].)[2]

In light of the circumstances we have described above, we agree with the trial court that parol evidence of the Edwards' undisclosed intention to retain the right to sue their insurer is inadmissible to contradict a release in which the Edwards unambiguously relinquish their right to pursue *all* claims, actions and causes of action related to the May 1984 automobile accident.[3] ■ " '[T]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on that subject.' " (*Crow* v. *P.E.G. Construction Co., Inc.* (1957) 156 Cal.App.2d 271, 278-279 [319 P.2d 47].) ■ The only reasonable meaning of the release in this case is that it encompasses the Edwards' presettlement claims of bad faith and unfair practice as well as their presettlement claims for damages resulting from the automobile accident.

---

[2] Appellants rely on only one case, *Vega* v. *Western Employers Ins. Co.* (1985) 170 Cal.App.3d 922 [216 Cal.Rptr. 592], in support of their argument. The *Vega* case is distinguishable. Unlike this case, it concerns the claim of a third party against an insurer after the third party signed a release relinquishing his rights against the insurer's driver and the insurer. The crux of the court's decision was that inclusion of the insurer's name in the release was ambiguous. Conversely, the insurer and its agents are the *only* parties which are specifically being released in this case. In any event, the reasoning of the *Vega* court on a related issue appears to have been disapproved by the Supreme Court in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 310-312 [250 Cal.Rptr. 116, 758 P.2d 58].

[3] Even if the parol evidence is considered (see *Pacific Gas & E. Co.* v. *G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]), it indicates only that appellants and their lawyer were operating under a unilateral mistake of law regarding the effect of a general release of all claims. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 503 [86 Cal.Rptr. 744].)

## DISPOSITION

The judgment is affirmed.

Ashby, Acting P. J., and Kennard, J., concurred.