[No. B083725. Second Dist., Div. One. Dec. 5, 1995.]

In re MISSION INSURANCE COMPANY et al. in Liquidation.
CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Plaintiff and Respondent, v.
IMPERIAL CASUALTY AND INDEMNITY COMPANY, Defendant and Appellant.

COUNSEL

Kirkland & Ellis, Tefft W. Smith, David A. Coulson, Kroll & Tract, Elliott M. Kroll, Bruce M. Friedman and David K. Ng for Defendant and Appellant.

Rubinstein & Perry, Karl L. Rubinstein, Dana Carli Brooks, Robert H. Nunnally, Jr., Melissa S. Kooistra and Michael J. Rothman for Plaintiff and Respondent.

OPINION

MASTERSON, J.—Defendant Imperial Casualty and Indemnity Company (Imperial) reinsured Mission Insurance Company (Mission) and two of its subsidiaries under various reinsurance agreements. In turn, Mission (but none of its subsidiaries) reinsured Imperial.

In 1985, the Insurance Commissioner (the Commissioner) placed Mission and its affiliated companies into conservatorship due to insolvency. In 1987, the Commissioner instituted liquidation proceedings. The Commissioner filed suit against numerous reinsurers of the Mission companies, including Imperial, to recover amounts due under the reinsurance agreements.

Imperial and the Commissioner entered into a settlement agreement resolving all of their disputes except one: whether Imperial could set off amounts owed to it by Mission against what it owed all three Mission companies. The settlement agreement provided that this issue would be resolved, if possible, in accordance with the California Supreme Court's anticipated decision on setoff issues in a pending case, *Prudential Reinsurance Co. v. Superior Court* (S014036, review granted Apr. 19, 1990).

After the high court rendered its decision in *Prudential Reinsurance Co. v. Superior Court* (1992) 3 Cal.4th 1118 [14 Cal.Rptr.2d 749, 842 P.2d 48] (hereafter *Prudential Reinsurance*), the Commissioner permitted certain setoffs but denied others. When the parties could not agree on the outstanding setoffs, the Commissioner moved to enforce the settlement agreement (Code Civ. Proc., § 664.6), arguing that Imperial was not entitled to any additional setoffs under *Prudential Reinsurance*. The trial court agreed and granted the motion. We conclude that the trial court properly interpreted the parties' settlement agreement and correctly applied *Prudential Reinsurance*. We therefore affirm.

BACKGROUND

Reinsurance results when one insurer (the "ceding insurer" or "reinsured") "cedes" (transfers) part of the risk it underwrites to another insurer (the "reinsurer"). (*Ascherman* v. *General Reinsurance Corp.* (1986) 183 Cal.App.3d 307, 311 & fn. 5 [228 Cal.Rptr. 1].) "In a reinsurance transaction, policyholders pay premiums to their original insurer [the reinsured], who, in turn, pays a reinsurer a percentage of the initial premiums as consideration for reinsuring a specified part of the original risk. If, after a loss, the original insurer must compensate its policyholders, the reinsurer in turn indemnifies the [reinsured]." (*Prudential Reinsurance, supra*, 3 Cal.4th at p. 1123.)

Imperial is a property and casualty insurance company based in Omaha, Nebraska. During the late 1970's and early 1980's, Imperial became active in the reinsurance market.

The relationship between Imperial and Mission began in the early 1980's. Mission reinsured Imperial. Imperial in turn reinsured Mission *and* two of its subsidiaries, Mission National Insurance Company (Mission National) and Holland America Insurance Company (Holland America).[1] Imperial reinsured the Mission companies through a series of "treaties."[2] Those treaties referred to the Mission companies collectively as "the Company." A typical treaty contained the following setoff provision: "The Reinsurer [i.e., Imperial] may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this certificate of reinsurance or under any other agreement heretofore or hereafter entered into between the Company [i.e., the Mission companies] and the Reinsurer, whether acting as assuming reinsurer or ceding company."

As noted, in October 1985, the Commissioner placed each of the Mission companies in conservatorship due to insolvency. By 1986, on a "bottom line" basis, Imperial owed the Mission companies more than they owed

---

[1]Imperial describes Mission as the parent company of Mission National and Holland America. The "Final Order of Rehabilitation" and *Prudential Reinsurance, supra*, 3 Cal.4th at page 1127, suggest that all three companies are subsidiaries of some other entity. However, our disposition of the appeal would not differ even if all three entities were sister companies. In any event, we assume for purposes of this appeal that the companies are related in the manner indicated by Imperial. We use the term "Mission companies" herein when referring collectively to all three companies.

[2]Reinsurance contracts are classified as either "facultative" or "treaty." Reinsurance is facultative if it covers the reinsured's risk on an individual policy. The majority of reinsurance contracts are placed under a treaty, which covers the reinsured's risk for an entire class of policies. (*Prudential Reinsurance, supra*, 3 Cal.4th at p. 1126.)

Imperial. In February 1987, the Commissioner placed each of the Mission companies into liquidation proceedings. The assets of each company were transferred to separate trusts for the benefit of creditors, including policyholders. During the conservatorship period and into the liquidation period, Imperial continued to pay loss obligations to the Mission companies as they became due, even though Mission was apparently no longer making any loss payments to Imperial. Throughout this period, Imperial took the position that it was entitled to offset the loss payments Mission owed it against the loss payments Imperial owed the Mission companies. In other words, Imperial treated the Mission companies as a unit, seeking to reduce the amount it owed the Mission companies (under the treaties in which Imperial was the reinsurer) by the amount Mission owed it (under treaties where Mission— not Mission National or Holland America—was the reinsurer). Imperial based this claim to a setoff on Insurance Code section 1031.[3] The Commissioner eventually rejected this position.

The Commissioner filed suit against numerous reinsurers of the Mission companies, including Imperial, to recover amounts allegedly due under various reinsurance agreements. In November 1991, Imperial and the Commissioner entered into a "Reinsurance Commutation and Settlement Agreement" (the settlement agreement), which the trial court approved the following month. Among other things, the settlement agreement required Imperial to deposit $17,875,000 into a trust account. That was the amount in dispute between Imperial and the Commissioner over Imperial's claim to a setoff.

At the time the parties executed the settlement agreement, the California Supreme Court had granted review in *Prudential Reinsurance Co.* v. *Superior Court, supra.* That case involved setoff issues between the Mission companies and another reinsurer, Prudential Reinsurance Company. The Commissioner and Imperial agreed to distribute the disputed funds in accordance with the decision anticipated in *Prudential Reinsurance.* In that regard, the settlement agreement distinguished between two categories of contracts. "Section I contracts," valued at $10,741,000, involved amounts due between Imperial and Mission in their capacities as reciprocal reinsurers.[4] "Section II contracts," valued at $7,134,000, involved amounts owed by Imperial to

---

[3]That statute provides: "In all cases of mutual debts or mutual credits between the person in liquidation . . . and any other person, such credits and debts shall be set off and the balance only shall be allowed or paid."

[4]A small portion of these setoffs concerned facultative assumptions by Mission National. However, the parties agree that this portion of the section I contracts resulted in a "reciprocal wash" and that they are not pertinent to the appeal.

Mission National and Holland America under the treaties in which Imperial reinsured those Mission subsidiaries.[5]

The settlement agreement set forth several scenarios to dispose of the funds at issue, dependent upon the various possible bases of decision by the Supreme Court. Under the first scenario, if the court did not allow any postliquidation setoffs, all of the funds in the trust account would go to the Commissioner. Under a second scenario, Imperial was entitled to the section I contract funds if *Prudential Reinsurance* allowed company-to-company setoffs.

Under a third scenario, the parties addressed the distribution of the section II contract funds. Imperial was entitled to those funds "in the event" the Supreme Court allowed setoffs "in the context of the use of contractual language which states in effect that the ceding 'Company' as used in the contract means all of the several Mission Companies listed in said contract."[6] If the high court did not allow setoffs in that context, the section II funds were to go to the Commissioner. However, if the Supreme Court did not resolve the issue of setoffs in the context described, the parties were to meet and confer in a good faith attempt to resolve all disputes. If informal resolution failed, they were to submit the matter to the trial court.

The settlement agreement contained a comprehensive mutual general release of all claims except the setoff issue. It also included the following provision for attorney fees: "In the event of a breach of this Agreement or should consideration fail for any reason, both parties shall have all rights and remedies available at common law. In addition, both parties shall have the right to exercise any of the following remedies: a) the right to bring suit on the Agreement for the amount due under the Agreement plus attorneys' fees, costs, and interest . . . . All remedies shall be cumulative."

On November 30, 1992, the Supreme Court filed its decision in *Prudential Reinsurance*. The parties herein agreed that *Prudential Reinsurance* authorized company-to-company setoffs, as contemplated by the second scenario in the settlement agreement. Accordingly, the Commissioner released to Imperial the $10,741,000 allocated to the section I contracts, and there is no issue before us as to those contracts. However, the Commissioner interpreted *Prudential Reinsurance* as not allowing a setoff with respect to the section II contracts, so he refused to release the remaining $7,134,000 to Imperial. The

---

[5]Unlike the section I contracts, the section II contracts did not involve reciprocal reinsurers; Mission National and Holland America had not reinsured Imperial.

[6]The term "contractual language," as used in this provision of the settlement agreement, apparently describes the clause in the treaties that refers to the Mission companies collectively as "the Company."

parties attempted to resolve this dispute informally. When that effort failed, the Commissioner filed a motion to enforce the settlement agreement under Code of Civil Procedure section 664.6.[7]

The Commissioner argued that the parties had agreed to be bound by the setoff principles announced in *Prudential Reinsurance* and that the Supreme Court had rejected the type of setoff sought by Imperial on the section II contracts, i.e., offsetting amounts owed to Imperial by Mission (the parent company) against what Imperial owed to Mission National and Holland America (the Mission subsidiaries). The Commissioner also sought an award of attorney fees pursuant to the settlement agreement for being compelled to file the motion. Imperial opposed the motion, asserting that *Prudential Reinsurance* had not resolved the setoff issue as to the section II contracts. Imperial also filed a cross-motion for summary adjudication seeking release of the withheld funds. The trial court granted the Commissioner's motion and awarded him $2,725 in attorney fees. Imperial filed a timely appeal from the trial court's order.[8]

DISCUSSION

This appeal requires that we (1) analyze the decision in *Prudential Reinsurance* insofar as it affects the section II contract funds and (2) interpret the settlement agreement. Because the parties do not rely on extrinsic evidence in construing the settlement agreement, we review the trial court's decision de novo. (See *Davies Machinery Co.* v. *Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23-24 [113 Cal.Rptr. 784].)

We turn first to an analysis of those portions of *Prudential Reinsurance* relevant to the issue before us, i.e., the disposition of the section II contract funds. The settlement agreement provided that those funds would be released to the Commissioner if the Supreme Court held in *Prudential Reinsurance* that setoffs were not allowed "in the context of the use of contractual language which states in effect that the ceding 'Company' as used in the contract means all of the several Mission Companies listed in said contract." (See fn. 6, *ante*.) The parties do not dispute that the reinsurance contracts in *Prudential Reinsurance* contained the "contractual language" referenced in the settlement agreement. Further, the contracts in

---

[7]At the time the motion was filed, section 664.6 provided in pertinent part: "If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

[8]In February 1995, the Commissioner moved to dismiss Imperial's appeal on the ground that Imperial had accepted the benefits of the settlement agreement (i.e., the $10,741,000 attributable to the section I contracts). We denied that motion. In briefing the appeal on the merits, the Commissioner requests that we reconsider our ruling. We decline to do so.

*Prudential Reinsurance* contained a setoff provision similar to the one in the Imperial treaties. (See *Prudential Reinsurance, supra,* 3 Cal.4th at p. 1127.) We therefore examine what *Prudential Reinsurance* held regarding setoffs in the context of related companies.

*Prudential Reinsurance,* like this case, involved two categories of reinsurance contracts. Under the "Relation A" contracts, Prudential Reinsurance Company (Prudential) reinsured five different Mission entities. (3 Cal.4th at p. 1126.)[9] Under the "Relation B" contracts, Mission or Mission National reinsured Prudential and its subsidiary, Gibraltar. (*Id.* at pp. 1126-1127.) Thus, while Prudential reinsured five Mission entities, only two of them reinsured it. Further, while two of the Mission entities reinsured Gibraltar, Gibraltar did not act as a reinsurer for any entity. In these circumstances, Prudential argued that it could offset the amount owed Gibraltar (Prudential's subsidiary) under the "Relation B" contracts against what Prudential owed the Mission entities under the "Relation A" contracts.

The Supreme Court rejected this contention, stating: "The key to setoff is the requirement of mutuality. . . . 'To be mutual, [the debts] must be due to and from the same persons in the same capacity.' " (3 Cal.4th at p. 1127, bracketed material in *Prudential Reinsurance.*) The high court continued: "[T]he Court of Appeal limited application of the setoff doctrine to true contractual debtor-creditor relationships between principal insurers. In doing so, it rejected Prudential Reinsurance's assertion that its subsidiary, Gibraltar, should be permitted to set off debts owed by Prudential Reinsurance under the 'Relation A' contracts even though Gibraltar is not a party to those contracts. The Court of Appeal concluded that because Gibraltar does not owe reinsurance proceeds or premiums to the Mission companies as a principal reinsurer under the 'Relation A' contracts, it has no mutual credits or debts with those companies upon which Prudential Reinsurance may claim a section 1031 setoff against what it owes Mission as their reinsurer.

"The Court of Appeal also observed that because Prudential Reinsurance was reinsured by Mission and by Mission National Insurance Company, but not other Mission companies, *the remaining Mission companies are not principal reinsurers having mutual reinsurance debts and credits with Prudential Reinsurance.*

"We agree with the Court of Appeal. Accordingly, we refuse to expand the section 1031 setoff of debts in the absence of express mutual agreement

---

[9]While the present case involves three Mission companies, *Prudential Reinsurance* concerned five related Mission entities, including the three companies involved here. The "Relation A" contracts reinsured either all or some of those five companies.

that the subsidiary would be deemed a mutual debtor-creditor of the parent. [Citations.] We conclude that such an unwarranted expansion of the setoff doctrine would permit an exponential increase in the amount subsidiaries could set off to the detriment of liquidation estates." (3 Cal.4th at p. 1137, italics added.)

Thus, the high court rejected Prudential's setoff claim, in part because the debts it sought to offset involved different Mission entities. Prudential could not reduce its debt owed as the reinsurer of the five Mission entities since only two of those companies had reinsured it. Moreover, the pertinent language in *Prudential Reinsurance* leaves no doubt that the court treated the various Mission entities as separate concerns.

The same rule applies in this case. Setoffs are limited to *mutual* debts and credits between *principal reinsurers*. Imperial reinsured each of the three Mission companies. However, only Mission—not Mission National or Holland America—reinsured Imperial. Plainly, a debt owed to the Mission subsidiaries lacks the requisite mutuality with a debt owed by their parent company. In the words of *Prudential Reinsurance*, because Imperial "was reinsured by Mission . . . but not other Mission companies, the remaining Mission companies [i.e., Mission National and Holland America] are not principal reinsurers having mutual reinsurance debts and credits with [Imperial]." (3 Cal.4th at p. 1137.) Given that Mission National and Holland America were not principal reinsurers, the debt Imperial owes them cannot be used for purposes of setoff under Insurance Code section 1031.[10] In sum, *Prudential Reinsurance* held that the Insurance Code does not permit the type of setoff Imperial seeks on the section II contracts.

We now turn to an analysis of the relevant portions of the settlement agreement. Imperial does not challenge the principle of mutuality for setoffs, as set forth in *Prudential Reinsurance*. Rather, Imperial contends that mutuality is present in this case. It bases that contention on its claim that under an alter ego or "single enterprise liability" theory, the Mission companies are in fact one legal entity. However, having reviewed the settlement agreement, we find, as did the trial court, that Imperial is foreclosed from making this claim.

■ "[W]hen the language of a contract is plain and unambiguous it is not within the province of a court to rewrite or alter by construction what has

---

[10]The same conclusion would follow even if the Mission companies were sister entities (as opposed to Mission being the parent of the other two). Regardless of the type of relationship between the companies, the fact remains that Mission National and Holland America were not principal reinsurers.

been agreed upon . . . ." (*Crow* v. *P.E.G. Construction Co.* (1957) 156 Cal.App.2d 271, 278 [319 P.2d 47], citations omitted.) ■ A release is "the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced [citations] and its effect is to extinguish the cause of action . . . ." (*Pellett* v. *Sonotone Corp.* (1945) 26 Cal.2d 705, 711 [160 P.2d 783, 160 A.L.R. 863].) Thus, a release "conclusively estops the parties from reviving and relitigating the claim released." (*Faye* v. *Feldman* (1954) 128 Cal.App.2d 319, 328 [275 P.2d 121].) ■ " 'The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding . . . .' " (*Edwards* v. *Comstock Insurance Co.* (1988) 205 Cal.App.3d 1164, 1167 [252 Cal.Rptr. 807].)

■ Imperial and the Commissioner elected to settle their differences and to "risk their all," as it were, on a Supreme Court decision not yet rendered at the time of settlement. With considerable care, they structured various scenarios, in an attempt to predict how the court might resolve the setoff issues before it. All of this was obviously done so as to bring an end to the dispute between them. And if there were any doubt about it, the parties (in what must be either the zenith or the nadir of lawyer tautology in terms of what was released) executed a general release in the following form: "Imperial hereby releases and discharges the Commissioner and the Mission Companies . . . from any and all liabilities and obligations arising under or related to the [reinsurance] Contracts, whether known or unknown, reported or unreported, and whether currently existing or arising in the future, including, but not limited to, all claims, obligations, set-offs (except as stated [elsewhere] herein), debts, demands, actions, causes of action, suits, sums of money, covenants, contracts, controversies, agreements, reckonings, rights of rescission, bonds, bills, promises, doings, omissions, damages, judgments, costs, expenses, losses, adjustments, accounts, representations, and warranties whatsoever, which Imperial ever had, now has or hereafter may have against the Commissioner and/or the Mission Companies by reason of any matter arising out of the [reinsurance] Contracts. Additionally, Imperial fully understands and expressly waives its rights and benefits under Section 1542 of the California Civil Code or under any similar provision of law. Section 1542 of the California Civil Code provides in relevant part: [¶] 'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.' " Given this language, we would not interfere with the parties' desire to have that which is finished stay finished, absent legal cause therefor. We find no such cause.

Imperial correctly points out that *Prudential Reinsurance* did not address whether the Mission companies were a single entity under an alter ego or single-enterprise liability theory. However, the settlement agreement did not make the distribution of section II contract funds contingent on any such determination. In settling the parties' disputes, Imperial released "any and all claims whatsoever," with the exception of the claim for a setoff. The provision in the agreement reserving the setoff issue makes no reference, implied or otherwise, to a claim based on a theory of alter ego or single-enterprise liability. Rather, it states that the section II funds will go to the Commissioner if the Supreme Court holds that a setoff is not permitted despite language in the reinsurance treaties referring to the various Mission entities as "the Company." *Prudential Reinsurance* in fact held that no such setoff was allowed. That should end the matter.

Nevertheless, Imperial argues that the settlement agreement did not need to mention alter ego or single-enterprise liability because those concepts were implicit in the agreement's use of the terms "setoff" and "offset." We disagree. Those terms are not synonymous with a claim that the Mission companies were one legal entity. Further, the language of the general release, quoted above, is extremely broad in scope, while the provision reserving the setoff issue is quite narrow. By simply referring to "setoffs" and "offsets," the settlement agreement did not ipso facto subsume a claim based on a theory of alter ego or single-enterprise liability.

Moreover, before settling the underlying lawsuit, Imperial had raised its alter ego theory in responding to discovery. Imperial was obviously aware of that claim when it agreed to the general release. Imperial also knew what issues were and were not before the Supreme Court in *Prudential Reinsurance*; more specifically, Imperial knew that there was *no* alter ego or single-enterprise liability issue in that case.[11] In these circumstances, it was incumbent upon Imperial to expressly mention its alter ego and single-enterprise liability theory so as to preserve it. "Because appellants knew they had a claim . . . against respondents, they had a duty to specifically exclude that claim from the release agreement." (*Edwards* v. *Comstock Insurance Co., supra,* 205 Cal.App.3d at p. 1169.)

As the trial court aptly put it: "The Court [in *Prudential Reinsurance*] was emphatic, however, that the setoff not be expanded beyond entities which shared mutuality of identity and capacity. . . . Notwithstanding Imperial's

---

[11]The Court of Appeal decision in *Prudential Reinsurance,* which was published, was filed on December 27, 1989, almost two years before the parties entered the settlement agreement. Also, according to the Commissioner, Imperial was served with copies of the Supreme Court briefs in the *Prudential Reinsurance* case.

argument to the contrary, the issue [of setoff as to the section II contracts] was squarely addressed and resolved by the Court as contemplated by the settlement agreement sought to be enforced. There is no basis in law or equity nor under the settlement agreement to apply any tortured analysis to broaden the doctrine of setoff."[12]

■ Finally, we reject Imperial's contention that the trial court erred by awarding the Commissioner attorney fees incurred in compelling enforcement of the settlement agreement. Assuming arguendo that Imperial did not "breach" the agreement by disagreeing (incorrectly) with the Commissioner's interpretation of *Prudential Reinsurance*, the trial court was still authorized to award fees.

The settlement agreement stated that the parties had "the right to bring suit on the Agreement for the amount due under the Agreement plus attorney fees, costs, and interest." Imperial's position on the section II contract funds, which was based on its erroneous interpretation of the settlement agreement and *Prudential Reinsurance*, necessitated the Commissioner's motion to compel enforcement of the agreement. Since that motion sought "the amount due under the Agreement," an award of fees was appropriate.

### DISPOSITION

The order is affirmed.

Spencer, P. J., and Ortega, J., concurred.

---

[12]Because the settlement agreement bars Imperial's contention that the Mission companies are one legal entity, the parties' evidence on alter ego and single-enterprise liability (including certain unconfirmed findings in a related proceeding) is of no consequence.