UNITED STATES of America ex rel. Dianne B. GILES, Plaintiff,

v.

Lyle SARDIE, an individual, Evan Martinez, an individual; Willie Dixon, an individual; Gregory Dixon, an individual; Wallace Kent, an individual; Sam Okike, an individual; David Lee Weems, an individual; ABC Demolition, a Business Entity of Unknown Legal Status; ACE Industries, a Business Entity of Unknown Legal Status; Cal West Demo, a Business Entity of Unknown Legal Status; Avex, a Business Entity of Unknown Legal Status; Evan Construction, a Business Entity of Unknown Legal Status; West Construction, a Business Entity of Unknown Legal Status; Turner Industries, a Business Entity of Unknown Legal Status; Gideon Enterprises, a Business Entity of Unknown Legal Status; ECA Unity Co, a Business Entity of Unknown Legal Status; Pacific Industries, a Business Entity of Unknown Legal Status; Doheny Construction, a Business Entity of Unknown Legal Status; Forbes Construction, a Business Entity of Unknown Legal Status; Kent & Sons, a Business Entity of Unknown Legal Status; Fynok American, a Business Entity of Unknown Legal Status; All in One Demolition, a Business Entity of Unknown Legal Status; International Industries, a Business Entity of Unknown Legal Status; Trump Construction Co., a Business Entity of Unknown Legal Status; Willie Dixon Truck, a Business Entity of Unknown Legal Status; William Keith Dixon; James E Pratt; DR Schmidt; John Doran; Michael Mitchell; Wilkes Bradley; Israel Cortezx; Paul Medina; Jay Shackelford; Pablo Reyes; Daniel Dulac; Santiago Perez; City of Los Angeles, a municipal corporation, and the following business entities of unknown legal status: AMI Industries; Action Industries; McMasters Construction; MRS Demo; DMD Construction; MSRV; LKE's Demolition; P & K Enterprises; Forbes Construction; State Construction; Excel Construction; D & R Construction; DELS Construction; Sophie Construction; Dani & Co; Douglas Construction & Demolition; Craig & Armand's Wrecking; Carmen Construction Co.; Forty Acres & Contract; Bubba & Sons; McDuffies; Lanzie & Associates; City Training Institute; O'Doran & Co.; Caroll & Co.; Public Works Demolition; Cousin Jack; Contract Management; Greystone Company; Universal Management; Carnegie Enterprises; Peck Construction; Ocean Construction; West International; Eagle Construction; Zion Co.; Hughes Co.; Rockefeller

Industries; Economy Building; Low Budget Construction; DW Construction; Alpro/DW Construction; Pratt's Wrecking; Tiptoe; MCM; LRG Construction; RG Construction; SRM Construction; RGG; GLTG; MDD Construction; DD Construction; LRGG; Doran Engineering; Dixon Demo & Trucking; General Excavation; RG Excavation; LRG Excavation; Wilco Equipment; IDC Builders; Leeco Construction; ADR; RPM; LA City Construction; New Age Demolition; PRS Demolition; Rozanne's Demolition; MS Demolition; Indian Demolition; BTJ; West Coast Land Clearing; Daniel Dulac; MM & R Services; Enviroprop; Santiago Perez; Perez Construction; Gomez & Sons and DOES, 1 through 20, Defendants.

Evan Martinez, Third–Party Plaintiff,

v.

Fleming Construction & Equipment; Terry Fleming; Frank Bresher; and Tony Catone, Third–Party Defendants.

Evan Martinez, Cross–Claimant,

v.

Lyle Sardie; and Michael Mitchell, Cross–Defendants.

No. 96CV2002.

United States District Court, C.D. California.

Aug. 7, 2000.

## ORDER GRANTING FLEMING'S MOTION FOR SUMMARY JUDGMENT

BAIRD, District Judge.

## I. INTRODUCTION

This matter comes before the Court upon the third-party defendants' motion for summary judgment of the third party complaint against Fleming Construction & Equipment, et al. ("Fleming"). At issue here is the validity of a release agreement signed by Martinez and Fleming pursuant to the settlement of a state action between the two parties. After careful analysis, the Court finds that the aforementioned release is valid, and thus bars the present claim for indemnification. Therefore, Fleming's motion for summary judgment is granted.

## II. FACTUAL BACKGROUND

On January 17, 1994, an earthquake centered in Northridge, California, struck the Los Angeles metropolitan area. The City of Los Angeles ("City") established a city-sponsored demolition and debris removal program under the leadership of the Bureau of Engineering of the Department of Public Works by January 25, 1994. City declared a state of local emergency and entered into demolition and debris removal contracts. City Council also implemented a local preference policy in awarding recovery contracts to help resuscitate the local economy. Third-party plaintiff Martinez was awarded contracts by City as part of the debris removal program. (*See* Fleming Decl., Ex. A.)

On February 25, 1994, the Public Works Committee Report to City Council stated that several debris removal contractors had submitted invoices which allegedly overbilled and mischarged for their services.

On June 10, 1994, Fleming Engineering, Inc. (erroneously sued as Fleming Construction & Equipment) entered into thirteen separate subcontracts with entities owned by Martinez. (*See* Martinez Decl., ¶¶ 6–7.) The subcontracts provided that Martinez would be paid 7.5% of the gross income from the contracts which Fleming performed with the remainder being paid to Fleming. (*See id.* at ¶¶ 4–5.)

In 1995, Martinez filed a complaint against Fleming in the Superior Court of California, County of Los Angeles, for claims based upon the thirteen subcontracts. The parties eventually negotiated a settlement agreement resolving all claims. (*See id.* at ¶¶ 16–19; Fleming Decl., Ex. B.) On June 19, 1996, Martinez executed a full release of all claims ("Release").[1] (*See* Fleming Decl., Ex. B.) In paragraph three of the Release, Martinez expressly waived California Code of Civil Procedure Section 1542. As consideration for signing the Release, Martinez received $15,000 from Fleming. (*See id.*)

Relator Diane Giles filed the First Amended Complaint in her qui tam action on October 23, 1998. On November 24, 1999, Evan Martinez, a named defendant in the complaint filed by Giles who is representing himself in all matters before this Court, filed an answer to Giles' First Amended Complaint and included a third-party complaint naming Fleming Construction & Equipment, Terry Fleming, Frank Bresher and Tony Catone ("Fleming") as third-party defendants. (*See* Def. Answer and Third–Party Complaint at 3– 6.) On February 3, 2000, Fleming filed the present motion for summary judgment. Martinez filed his opposition to the motion on March 27, 2000. Fleming filed its reply on April 3, 2000.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) authorizes entry of summary judgment "if ... there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247– 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a mere scintilla of evidence is not sufficient to defeat a properly supported

motion for summary judgment, *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505, the motion should be denied if there are any genuine issues of material fact in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, the trial court must review the evidence in the light most favorable to the non-moving party. *See T.W. Elec. Serv. v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir.1987).

### IV. THE RELEASE BARS MARTINEZ' PRESENT CLAIM

#### A. The Terms of the Release

■ As noted above, the Release executed on June 19, 1996, was the result of a negotiated settlement agreement which resolved all the claims of the state court action between Martinez and Fleming. The first paragraph of the Release provides that Martinez releases Fleming

> of and from any and all claims ... of any nature whatsoever, known or unknown, disclosed or undisclosed, whether or not existing as of the date of this release, including, but not limited to those arising out of, or in any way related to, the matters complained of in the arbitration.

(Fleming Decl., Ex. B.) The second paragraph of the Release contains several statements regarding admissions of liability. The third paragraph addresses future claims related to the state action specifically. It includes a waiver of rights under California Civil Code § 1542. (*See id.*) Section 1542 provides: "a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release,

---

1. The parties dispute the extent of the involvement of Martinez' counsel with regard to the settlement agreement. Martinez claims that he negotiated and executed the Release on his own behalf. (*See* Martinez Decl., ¶¶ 15–18.)

which if known by him might have materially affected his settlement with the debtor." *Cal.Civ.Proc.Code* § 1542.

### B. The Release is Not Void for Fraud

Martinez argues that the Release is invalid because it was procured by means of fraudulent inducement. (*See* Opp. at 6–10.) Martinez claims that Fleming was aware of the overbilling practices, but chose not to disclose that fact to Martinez, thus perpetrating a fraud. (*See id.*) Martinez cites *San Diego Hospice v. County of San Diego,* 31 Cal.App.4th 1048, 37 Cal. Rptr.2d 501 (1995), in support of his argument. Fleming argues in response that the facts do not sufficiently support a finding that each of the elements of fraud are met. (*See* Reply at 10–12.)

In *San Diego Hospice,* the plaintiff sued San Diego County in a dispute over land contaminated with hazardous materials that the plaintiff purchased from the County of San Diego, *See San Diego Hospice,* 31 Cal.App.4th at 1050, 37 Cal.Rptr.2d 501. The parties reached a settlement agreement that included a release of all known or unknown claims; however, the plaintiff attempted to rescind the release when a second source of contamination was subsequently discovered on the land. *See id.* at 1051, 37 Cal.Rptr.2d 501. The plaintiff alleged fraudulent concealment of a second tank which was the source of the previously undiscovered contamination. *See id.* at 1053, 37 Cal.Rptr.2d 501. According to the court, a party that seeks rescission based on fraudulent nondisclosure must show:

(1) the defendant failed to disclose a material fact which he knew or believed to be true, and (2) the defendant had a duty to disclose that fact. The duty to

disclose arises when two elements are present: (1) the material fact is known to (or accessible only to) the defendant; and (2) the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact. *Id.* at 1055, 37 Cal.Rptr.2d 501 (citations omitted). As to the second prong of the analysis in determining whether a duty to disclose existed, the court in *San Diego Hospice* determined that there was no evidence that San Diego County actually knew of the second source of contamination when it entered into the release, and, therefore, no duty to disclose existed. *See id.* at 1056, 37 Cal.Rptr.2d 501.

 The same reasoning applies in the present case as neither element of the duty to disclose has been sufficiently established. First, there is no evidence before the Court establishing that Fleming knew of the overbilling practices. Second, and more importantly, even assuming that Fleming was aware of overbilling, Martinez has offered no evidence to show that Fleming knew that Martinez was not aware of overbilling.[2] Martinez instead argues in conclusory fashion that because Fleming had "superior and exclusive knowledge" of any overbilling practices and the preparation of the invoices, it must have known about the alleged overbilling and mischarging. (*See* Opp. at 10.) Absent evidence of Fleming's knowledge of Martinez' lack of awareness of overbilling, Fleming's duty to disclose is not sufficiently proven. Such general conclusions do not meet the burden for seeking rescission of the Release for fraud.

Therefore, the Court concludes that in the absence of any evidence presented by

**2.** In fact, as Fleming argues, if Martinez had reviewed the invoices before they were submitted to City for reimbursement, he may have easily known that the alleged overbilling was occurring. (*See* Reply at 12.) It appears that Fleming submitted the invoices directly to City. (*See* Martinez Decl., ¶¶ 9–11.) There is no dispute, however, that Martinez chose not to review the invoices himself.

Martinez to the contrary, there is no genuine issue of fact that Fleming knew of the overbilling practices, or was aware that Martinez lacked knowledge of the improper billing practices. Accordingly, no genuine issue of fact exists to support a finding of fraudulent nondisclosure; therefore, the Release is not void for fraud.

### C. The Release Bars All Unknown Claims

Martinez also argues that the Release does not bar all claims unknown or undisclosed at the time of its signing. (*See* Opp. at 10–16.) He argues that both the rules of contract interpretation and the circumstances surrounding the negotiation and signing of the release show that the parties did not intend for the Release to cover claims such as the present claim for indemnification. (*See id.*) The question before this Court is whether the Release can be interpreted to extend to all unknown claims. If no genuine issue of fact remains, summary judgment must be denied.

### 1. The terms of the Release are clear and unambiguous

█ The primary task of a court when reviewing the terms of a contract is to give effect to the mutual intentions of the parties at the time of contract. *See Cal.Civ.Code* § 1636. In doing so, the court will enforce the outward expression of the parties' intentions rather than their uncommunicated subjective intentions. *See Edwards v. Comstock Ins. Co.* 205 Cal.App.3d 1164, 1169, 252 Cal.Rptr. 807 (1988); *see also Cal.Civ.Code* § 1639 (when the contract is in writing "the intention ... is to be ascertained from the writing alone, if possible.").

Martinez has offered parol evidence which establishes his uncommunicated subjective intent as to the meaning of the terms of the Release. Martinez cites *Casey v. Proctor,* 59 Cal.2d 97, 109–113, 28 Cal.Rptr. 307, 378 P.2d 579 (1963), for the proposition that extrinsic evidence is admissible to determine the intent of the parties to a contract.[3] Fleming argues that such evidence is inadmissible because the written terms of the agreement are clear.

█ "Parol evidence is admissible only to prove a meaning to which the language is 'reasonably susceptible,' (*Pacific Gas & E. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 38, 69 Cal.Rptr. 561, 442 P.2d 641 (1968)), *not to flatly contradict the express terms of the agreement.*" *Winet v. Price,* 4 Cal.App.4th 1159, 1167, 6 Cal.Rptr.2d 554 (1992) (citation omitted) (emphasis added). In *Winet,* the court rejected the plaintiff's evidence submitted in support of the proposition that a release did not in fact apply to unknown claims. *See id.* In reaching its conclusion that the release applied to the unknown claims at issue, the *Winet* court stated

> [the] law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard, manifest an intention to agree in this regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on that subject.

There is no evidence before the Court, however, sufficient to establish who in fact drafted the Release. Thus, Martinez' argument on this point is lacking in merit.

---

**3.** Martinez also alleges that Fleming and/or Fleming's counsel drafted the Release; therefore, the Court should construe ambiguities in the language of the Release against Fleming.

*Id. (quoting Crow v. P.E.G. Const. Co., Inc.,* 156 Cal.App.2d 271, 278–79, 319 P.2d 47 (1957)); *see also Brinton v. Bankers Pension Servs., Inc.,* 76 Cal.App.4th 550, 560, 90 Cal.Rptr.2d 469 (1999).

■ It appears to the Court that the language of the Release conveys the intent of the parties to include all unknown claims clearly and unambiguously. The first paragraph of the Release explicitly states that Martinez released Fleming of all claims "known and unknown, disclosed or undisclosed, whether or not existing as of the date of [the] release, including, but not limited to those arising out of, or in any way related to, the matter complained of" in the state action. *(See* Fleming Decl., Ex. B.) The language is decidedly similar to the language of the release in *Winet* which the court held extended to all unknown claims. The phrase "including, but not limited to" plainly suggests that future claims not related to the state action are also subject to the Release. *(See id.)* As in *Winet,* it is hard to imagine a more clearly worded statement of the parties' intentions with regard to unknown claims.

Furthermore, the parties also negotiated an express waiver of California Civil Code § 1542 in the third paragraph of the Release meaning that the Release would extend to any claims arising from the matters involved in the state action. *(See id.)* The express waiver of section 1542 is further evidence in support of the Court's finding that the negotiations produced clear and unambiguous language which reflects the parties' intentions to include all unknown claims in the Release. There is no evidence before the Court that Martinez communicated to Fleming an intention to the contrary, that is, that he desired to retain his right to sue Fleming in the future.

## 2. The circumstances surrounding the signing of the Release

■ The evidence offered by Martinez in the form of his own declaration and the declaration of his attorney regarding the circumstances surrounding the signing of the Release is simply an attempt to contradict the language of the Release. At most, the declarations establish that neither Martinez nor his counsel were aware of the overbilling practices. *(See* Martinez Decl., ¶¶ 11, 19–20; Moret Decl., ¶¶ 9, 11.)

As for the circumstances surrounding the signing of the Release, the only factual difference between the present case and *Winet* is that Martinez allegedly negotiated the settlement on his own behalf. *(See* Martinez Decl., ¶¶ 15–18; Moret Decl., ¶¶ 10–12.) Even so, there is a discrepancy in the accounts of the settlement negotiations offered by Martinez and his attorney. While Martinez claims to have acted on his own behalf, his counsel states that "[s]ometime after the submission of the Superior court action to private arbitration, I ceased to participate in settlement negotiations," and that he did not participate in the "final settlement negotiations" or review the Release. (Moret Decl., ¶ 12.) While Martinez claims that he negotiated on his own behalf in order to save money and time *(See* Martinez Decl., ¶ 16.), there is no dispute that he had access to counsel and that he could have, had he chosen to, asked his attorney to review the settlement agreement and Release.

If this Court were to find that the release was invalid as to unknown claims, based on the fact that Martinez lacked counsel, parties to arbitration proceedings could guarantee themselves a similar finding that a settlement agreement was invalid by negotiating on their own behalf and then claiming later that they lacked the advice of counsel. Therefore, given the

circumstances, the Court is not persuaded by Martinez' argument on this point.

Thus, as in *Winet*, evidence of Martinez' undisclosed intent regarding future claims is inadmissible because it serves merely to contradict the comprehensive and broad language of the Release. *See Winet*, 4 Cal.App.4th at 1167, 6 Cal.Rptr.2d 554. Moreover, if the Court were to entertain argument that a release of unknown claims was not intended to include unknown claims, a release could never effectively encompass unknown claims. *See id.*

Therefore, the Court concludes that no genuine issue of fact remains that the Release applies to all unknown claims including claims for indemnification arising from the subcontracts at issue in the principal case of *Giles v. Sardie, et al.* in which Martinez is named as a defendant.[4]

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment as there is no dispute as to the fact that the Release is valid and properly includes unknown claims such as Martinez' claim for indemnification. Furthermore, the Court DENIES Fleming's request for an award of sanctions.

**IT IS SO ORDERED.**

---

4. Fleming requests that the Court impose sanctions pursuant to Federal Rule of Civil Procedure 11. It does not appear to the Court that Martinez' claim for indemnification was wholly frivolous nor that it was presented for any improper purpose. Therefore, Fleming's request for an award of sanctions is denied.